FILED IN
Court of Appeals

DEC 2 1 2015

Lisa Matz
Clerk, 5th District

No. 05-15-01362-CV

# IN THE COURT OF APPEAL FOR THE FIFTH DISTRICT OF

# TEXAS AT DALLAS

FOR THE 401st DISTRICT COURT OF COLLIN COUNTY, TEXAS

---

DIANA FAY BASS, APPELLANT

VS.

RICHARD HILL BASS, APPELLEE

---

## "APPELLANT'S BRIEF"

---

**PARTY FILING BRIEF- DIANA FAY BASS**

**Appellant  Diana Fay Bass**

**(972) 213-6095**

**db424fzfz@live.com**

**Pro Se Litigant**

**P.O. Box 432**

**McKinney, Texas  75070**

**Appellee  Richard Hill Bass**

**Philips & Epperson Attorneys**

**hstroud@philipandepperson.com**

**Attorney Hannah Stroud**

**2301 Virginia Parkway**

**McKinney, Texas   75071**

**(972)  562-9440**

## APPELLANT REQUEST ORAL ARGUMENT, Trap 9.4 (g), 39.7.

Request 20 minutes, Appellant may not be presenter

APPELLANT DIANA BASS

# TABLE OF CONTENTS

TABLE OF CONTENTS

1. Table of contents

4.  Case Summary

5.  Appellant's Summary

6.  Conclusion

7.  Prayer

Honorable Judge Mark Rusch, Collin County 401st District Court, trial judge, signed the orders for Emergency Ex Parte Motion for Appointment of Receiver and, Alternative, Emergency Motion to Compel Respondent to Comply with Terms of the Mediated Settlement Agreement; Affidavit in Support of Emergency Ex Parte Motion for Appointment of Receiver and, Alternatively, Emergency Motion to Compel Respondent to Comply with Terms of the Mediated Agreement; Order on Motion for Emergency Ex Parte Motion for Appointment of Receiver; and Motion for Appointment of Receiver, and Alternatively, Motion to Order Respondent to Comply with Terms of the Mediated Settlement Agreement; dated November 2, 2015.

## CASE SUMMARY

**WITH THIS BRIEF,** Appellant, Diana Fay Bass (DFB), she argues the Ex Parte Hearing gave Power of Attorney (for 30 days) to sign anything Richard Bass chose to sign, over to the very person that performed intentional acts of fraud against her, including Mediated Settlement Agreement (MSA) and the Divorce Settlement. Appellee claimed imminent need to sell homestead due to foreclosure, not true, the buyer just had to make sure he got the property cheap and for his development. Richard Bass used that power of attorney to continue with his fraud (and refuses to give all documents he signed), illegal.

Appellant's homestead and separate property were sold, with this Power of Attorney given to a buyer/developer and Richard Bass that had committed fraud, and breach of contract to Diana Bass. Selling this property was totally against her will, and of which she refused to sign

1

any documents, which would have been more fraud committed against her. Diana Bass Constitutional right to her sole and separate property (by gift) was violated, and her homestead was given away. Diana Bass received monies for. There was no emergency.

The judge signed order Friday afternoon, therefore, Appellant was not told until Monday, at 8:15 a.m., notice by telephone. The order was signed for hearing Friday around 4:30 p.m. The Judge refused to sign any of Appellants orders to oppose MSA. The only emergency was, that would that the lender would foreclose (on one half of the house). They needed Appellants signature to complete the fraud against me, and the judge gave it to them, and Appellant claims serious abuse of courts discretion. My rights were violated as a citizen and defendant.

Richard Bass refuses to give me copies of all the documents he signed illegally without my permission. Demand for discovery will be filed.

Richard Bass agreed in settlement to pay $170,000.00 to Appellant after illegally signing selling her sole, separate and community properties, so he actually violated the agreement. MSA void.

Fraud, lies, coercion, duress, intentional misrepresentation of material facts (such as Diana Bass was co-trustee, co-grantor, co-beneficiary), MSA void. Trust in Texas have very specific laws, any attorney should have known that, Richard Bass violated many trust laws, and the documents he signed with Power of Attorney was to close

2

trust, and cover up his fraud upon the estate.

Appellee, gifted intentionally, during marriage of 17 plus years, via Bass Living Trust, with recorded deeds, litigants as co-owners, joint bank account to manage trust and its monies, and comingling of everything, . Land was cleared of trees and brush, rental properties remodeled together, and property rented many times. Character changed when gifted to Appellant in trust documents, recorded deeds, income taxes filed. There is no need for tracing as it was very clear where funds went, there was a joint trust and business bank account.

Richard Bass breached contracts for sale of properties, but he could not sell the homestead and Appellants separate property without her signature, the contract on homestead was up that day. We had jointly signed contracts to sell all significant assets, Appellee sold illegally the land as one of the trustees, without Appellants knowledge, violating trust laws and provisions. Texas trust laws are very serious in this state.

The Mediated Settlement Agreement is a legal contract, except when obtained thru fraud, duress, coercion, threats, "no meeting of the minds", and intentional lies. Separate or community property or property division was intentionally not written into this contract, nor Divorce Settlement. Property division and money division are the essential elements MSA.

Common land and constructive fraud was committed by Richard Bass against Appellant. He sold the properties without informing Diana

3

Bass, took money and hid it, and then closed trust with Power of Attorney. Well thought out crime, property and monies theft, and stealing from trust. Property was not his sole and separate properties, it was intentional fraud in MSA to state so. Not giving Diana Bass one-half her share or basically any monies to date, with Appellant as beneficiary, trustee, and grantor of Bass Living Trust is illegal, and subject to further litigation.

While theft of properties and monies has taken place against her, Appellant has had to file indigency, cannot get an attorney pro bono, and has affected her right to justice. Living cost, insurance premiums, medical bills past and present (which need to be paid), prescription cost, limited food, car expenses, clothing expenses, Diana Bass living well below the means she did previously. Appellee states "we were separated three years", not true, toxic mold in homestead, she had to move. Diana Bass has serious exposure to toxic mold, (see exhibit), and needs to move now to a clean non-toxic environment now, and receive medical care, but cannot due to lack of funds. Also, both of her homes were sold illegally, and she will be evicted any moment, without any funds to move. Diana Bass R.N., Appellant is on Social Security Disability only, and due to two very serious health conditions, requiring very expensive treatments every three weeks., she cannot work. She needs serious medical and a clean non-toxic environment now. Money received from this case will affect her future, and ability to even live day to day. Lack of adequate attorney access is contributing to the injustice of it all, including unneeded stress and increase in medical treatments due to constant work on this case. Appellant request for court to order pro bono attorney to defend.

4

## APPELLANT'S ISSUES PRESENTED

!. Mediated Settlement Agreement is void due to fraud, lies, "ambiguous in nature", did not include property division in written contract, misrepresentation, malicious intent to deceive, and unfair and unjust, coercion, and severe duress (torture) and threats by mediatory and my own attorney. Seventeen plus years of marriage at the minimum community. Judge did not have right to give Power of Attorney. Hearing was illegal, unjust and unfair, and certainly not protecting Diana Bass right as a defendant. Court abused its discretion.

2. Appellee committed (Diana Bass being all three) fraudulent transfer of properties and monies, violating common and constructive law.

3. Unequal and unjust property division in a marriage via MSA.

4. Ex Parte Hearing violated Constitutional and Texas laws, violating homestead and separate property rights, and right to equal justice, under the law.

5. Appellee, deliberately intended to cause tax liability to Appellant's, by adding " innocent spouse" may not be used, put into divorce decree after stating "he would pay all taxes." Again, deliberate deception. The land was sold without her knowledge, and allowing this deduction is important. Another example of fraud in MSA.

6. This property was a major significant asset, and Richard Bass signed document on his half of the home and one acre to allow short sale and

5

foreclose. This was illegal for Richard Bass to do so, Diana Bass argues continued fraud upon her. He was not the sole and separate owner of the property.

7.    Cruelty in a divorce, including all proceeding, documents, Power of Attorney, no spousal support, no community medical bills being paid, fees being paid by the buyer/developer, while requiring Diana Bass to represent herself, which is spousal abuse. Appellant argues "unfair, unjust, and illegal" intentional actions of spouse against her, including Ex Parte Hearing.

8.   Power of Attorney was not in settlement Diana Bass signed, MSA papers were substituted and added after the facts, note on initials, etc..

## APPELLANT'S ARGUMENTS

Appellant argues Mediated Settlement Agreement, are subject to avoidance on the grounds if fraudulent agreement. (1) Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of the proof,'. 12A Tex. Jur. 3d Compromise and Settlement 18 (see App.1).

Mediated Settlement Agreement must be complete and within the contract, every material detail, which contain all the elements of the contract. Not including what is separate, community, or both in agreement immediately voids contract.

Appellant raises general issue of material fact that Richard Bass claim that the acreage from Bass Living Trust (Exhibit B), was his sole

and separate property, from Bass Family trust (2004) to Richard Bass, then Richard Bass to the Bass Family Living Trust to Vintage Place Funds with sale of lands estimated 8.3 acres (sold $945,000.00, 7.3 acres sold warranty deed for $10.00, dependent upon approval planning and zoning.

Someone need only point out evidence that raises a fact issue on the challenged elements, Hamilton vs. Wilson, 249 S.W., 3d 425, 426 (Tex. 2008), (see App 2) is asserting claims in this case during divorce proceedings, Barr v. Resolution Trust, 837 W. 2d, 627,631 (Tex. 1992) (see App 3). Any claims that arises out of these facts should be litigated in the same lawsuit, subject matter is based on the factual matter that makes up the complaint.

Parties in this appeal had "joint management of the properties," which makes tort liabilities or contract liabilities of either spouse, example-joint banking accounts, comingling of everything, joint business, and trust, recorded deeds, etc..

Richard Bass made argument that the character rules gave him the property as sole and separate. The Bass Living Trust put into writing designation the property (land and Graves property), and the farm property that was sold, and the homestead which was taken out of trust to borrow funds. This property was intentional gift, acquired during marriage, and separate or community of both, not just Appellee's.

Inception of Title Rule in Texas determines the character at the moment in time it is acquired. And because the rule looks to the time

that property is acquired, it does not matter if the deed names both spouses as grantees.

The character of an asset can be used, but community presumption can do the work for you (5). A spouse proving otherwise that property is not community must prove with clear and convincing evidence.

Appellant has also claim for damages to community assets as recovery for medical bills. (6).

The Vernon's Texas Statues and Codes Annotated, Family Code, 3.3001, 3.001, Separate Property, (See App.4) defines separate property as property that's "owned or claimed before marriage, and property acquired afterward by gift, devise, or descent" (7). It also, matters if it was intended, and in this case if was, married 17 plus years, 10 years properties in the trust and comingled, and co-managed.

Texas is a community property state.

Fraud, undue influence, accident, and mistake are grounds on which a compromise settlement may be set aside. Avoidance of lump sum settlement or release of bastardly claims on grounds of fraud, also cause for fraud. 12A Tex. Jur. 3d Compromise and Settlement 18 (See App 1).

The Texas Supreme Court ruled that the MSA (mediated settlement agreement) did not constitute a binding contract it appears this is a matter of law, that the court in this case may have to decide. A material misrepresentation by one party to another can

support repudiation or rescission by other party. Spouse failed to make proper disclosures, and should have disclosed all that he had sold, or was about to sell. Violations of trust and marital laws should support the argument for forced Alternative Dispute Resolution, which other party refuses.

Intentional fraud or inducement during MSA, Appellee stating properties sold was his sole and separate property, S. Univ. v. State Bank & Trust Co. 212 S.W. 3d, 813, 914, (See App 5); ad was known to be false when made and was intended to be acted upon, and was relied upon (in MSA), (see App 5). A court is not required to enforce an MSA (or Hearing orders based on fraudulent nature) if illegal in nature in nature, or procured by fraud, duress, coercion, or other dishonest means, Court of Appeals, El Paso, Gary Edward Morse, Appellant, v. Dana Ann Morse, Appellee, No. 08-09-0046-CV, (See App 6).

Richard Bass received (in promissory notes majority of property) estimated $945,000.00, he agree $170,000.00 should be his just and right settlement to me. Appellant argues not just and right to her, as she is due one half as separate and community of net monies, with his legal cost coming out of his half. Appellant also request monies for attorneys fee to be given now, further litigation for real estate and trust fraud, against many properties, is likely to be necessary. MSA was changed after the fact, and not notarized. What Diana Bass signed cannot be proven, invalid contract. Under no circumstances did Diana Bass agree to give Appellee any Power of Attorney, repeat, under no circumstances. There is a witness and emails to support this.

MSA was torture, as though, and duress, coercion (the mediatory threatened buyer/developer would be "waiting at the door with a handful of lawsuit" if Appellant did not sign MSA. Diana Bass's attorney stated "she would resign if MSA not signed tonight". The attorney was later released by Diana Bass, hearing signed judge immediately after signing order to release attorney, Twelve hours of torture (MSA) for a person of poor health, is unjust and unfair, it just led to confusion, despair, forgetfulness, extreme fatigue, unable to think correctly. Diana Bass was already overwhelmed by selling of her assets, without her knowledge, and then the surprise divorce. Threats of losing her "homes" while having no monies, or home to go to, initiated "absolute fear, confusion, and despair." Circumstances surrounding the documents was duress and coercion, was unjust, unfair, and cruel.

Under Texas law, constructive fraud may be imposed when a party breaches a fidicuiary-like duty relationship. Richard Bass breached this when properties from trust and without knowledge given to Diana Bass, illegally all properties, including monies, and land. Matter of Creating Trust Westlaw, Matter of Carlin Paxton Advertising, Inc., C.A. 5, Tex.)1991, 938 F 2d 595. (See App. 7).

Conveyance between husband wife, property was conveyed by deed, with intent to make a gift, Supreme Court in Jackson V. Hernandez, 155 Tex. 249, 285 S. W. 2d 184, Opinion Chief Justice Bell, (See App.8); and The Constitution as Amended in 1948, C. (a) Article 15, ?15, see (App 9).

11

Constructive fraud, is a community estate liability, Appellant seeking declaratory judgement and title of homestead and other properties returned to her, or $475,000.00 monies to her.

Transmutation of separate property, interspousal transfer, makes a gift of separate property of donee spouse, written instrument partitions it. Wife given separate property thru gift. and husband committed fraud on the community, allowing future attorney's fees. Not having an attorney that understood estate and real estate laws has been detrimental to Appellant. Another part of fraud, Richard Bass assuring no monies for legal to Diana Bass, therefore, fraud could continue.

A contract is ambiguous in nature, if a provision of a contract (property ownership and division) is susceptible to more than one interpretation. This case would certainly apply this rule.

Fraud on the community, spouse has no right to manage.

When Richard Bass obtained Power of Attorney he was allowed to act as Diana Bass, making him sole management of the community. This was Fraud on Diana Bass. Jean v. Tyson-Jean, 119 S.W. 3d 1,5 (Tex. App-Houston (14th District), pet. Denied), Famliy Code-Title !, Chapter 3.Family Code 3.102, (See App. 10).

Appellee, engaged in fraudulent transfer of assets, and monies. Diana Bass contested the MSA in motions never signed by judge. The Honorable Judge violated her constitutional rights during hearing, transcript of hearing will show judge was demeaning and embarrassed her regarding her disability. Equal Opportunity law

does not allow this in a court of law. Diana Bass has two serious illnesses and should not be disgraced, because she is on disability. The Judge possibly exhibited, unknowingly, possible favoritism to other party.

Just and right division of community property should be awarded to each party, and having due regard, for the rights of each party. Tex. Fam. Code 7.001 (Vernon 2006), (See App.4).

Appellant not required to Marshall the proof, its response need only point out evidence that raises a fact issue on the elements, Hamilton vs. Wilson 249 S.W. 3d, 425, 426, Tex. 2008, (See App. 2).

Contract is void if it calls for illegal action. Misrepresentation and embellishment, and just plain fibbing is obfuscation. MSA fraud ad dishonesty, Milner vs. Milner, 2012, Tex. (The Texas Supreme Court, March 9, 2012, Cause No. 10-776.). Family Code-Title 1, Chap. 6, Suit for Dissolution of Marriage, (See App. 11).

Appellant asking for damages, which should be enacted into this lawsuit. Where a twenty acre tract was conveyed to spouse prior and on that date petition filed, husband conveyed interest in resident, title, interest, claim, etc.. Court was entitled to consider in prior divorce petition, Statue 7.001, General Rules of Property Division. Appellant now asserting claims prior to divorce, Barr v. Resolution Trust 837 W. 2d 627, 631., Tex. 1992, (See App. 3).

Richard Bass, signed trust, deeds, joint bank accounts, etc., voluntarily. Selling the properties, breaching contracts, no lack of fiduciary responsibility to Diana Bass, spouse and co trustee, was

13

unconscionable; Appellant was not provided a fair and reasonable of the selling and disclosure of properties sold, assets sold; Section 4.006, Enforcement of Family Code.

Conversion to community property methods, a spouse's separate real property remains separate unless divested by deed, due process of law, or the working of an estoppel.. Community property, a presumption should arise that the names of both spouses on the title to the property changes the character of the property from separate to community. Community benefit was intended. Payments of a loan made from joint bank accounts, of property 403/405 S. Graves, McKinney, Texas, this was so done.

The Constitution of 1876, states community presumption at the minimum. Constructive fraud arises when a spouse unfairly disposes of the other spouses one-half interest in community property, burden of proof on disposing spouse to prove fairness of disposition.

Community funds comingling defy resignation and identification. A recital states that the property is conveyed to a spouse as his or her separate property. Privity-a non-grantee is a party to the transaction if she is a grantor, parole evidence to contract the recital, and such evidence is admissible.

Richard Bass agreed to non-judicial against spouse, property fraud. Both parties had contract on property, violated that contract. Hearing never addressed this issue, nor spousal support whether marital asset or your separate property. Community acquired by gift, but otherwise put in trust, is separate property.

14

Hearing took away my separate and homestead property. Was illegal transfer of property. District courts cannot take away separate property. Diana Bass has superior title to the property, and would request court to return the property, or buyer pay $317,000.00 immediately to Appellant. Hearing illegal, improper, unjust, allowed theft of properties and monies. Many papers were possibly signed illegally thru Power of Attorney given to Richard Bass per judges order. Due to this hearing there was fraudulent transfer of property belonging to appellant, from spouse to buyer.

Clear and convincing evidence is not satisfied when characterizing the property at issue as separate property which requires surmise or speculation by the court. Any doubt must be in favor of community property.

All property possessed by either spouse during or on dissolution of marriage is considered to be community, Tex. Fam. Code, Ann 3.003 (a), Vernon 2006, Barnett, (see App. 4).

Method of tracing-community out first. Smith v. Smith 22. S.W. 3d 140, !46 (Tex.App. Houston (14th District.) 200, no pet.) (See App. 12). Argument during MSA was that tracing needed to be done, no true.

Recorded title is community. stating a gift is a transfer of property made voluntarily and gratiously. Concluding wives acquisition of trust Income from testamentary trust was by gift or devise). Fam. 3.006, Proportional Ownership of Property by Marital Estates. (See App. 12).

14

An attempt by the parties to fix the character of marital property by means different than the state constitution, and doctrine of implied exclusion, held the agreement to be void and unenforceable.

A material misrepresentation by one party to an agreement can support rescission or repudiation by the other party. A failure to disclose material information by one contracting party can lead to the rescission under what is essentially fraudulent inducement, such as bank accounts, where monies after properties is located, trust documents verifying Subtrust, etc., while claiming that was one of the reasons property (land) was his sole and separate property. In the case of Boyd v. Boyd the trial court denied enforcement of the agreement, because if failed to include substantial assets of the parties, including future earnings, and present income from sell of significant assets, Boyd v. Boyd, Westlaw, 67 S. W. 3d 398, Court of Appeals of Texas, Fort Worth, 9See App. 13). When one discloses information, he has the duty to disclose the whole truth rather than making a partial disclosure, that conveys a false impression. To date, no information given where monies are located.

Personal and business records, especially those signed illegally thru Power of Attorney, are not to be concealed and family records, property records, any records of income, debts or other obligations, local rules of Travis County. Withholding information about substantial marital assets will not save the MSA from being held unenforceable.

Ex Parte Hearings are for temporary order requirements include nothing about order to give Power of Attorney to a husband that had committed serious fraud upon Defendant (Appellant). They are usually

used in protective order. The only protection here was to ensure buyer/developer stole Diana Bass properties that day.

The sell of the properties had contingencies, based on getting planning and zoning approval, and particular provisions of the agreement were illegal and violated public policy. Selling properties under such conditions, and still not paying any monies to Diana Bass is theft and fraud of monies and properties.

The Fort Worth Court of Appeals overturned the trial court's holding, and the set aside the Final Decree of Divorce as there was no meeting of the minds at the time of the entry of the MSA In this case there was definitely no meeting of the minds, nor is there as of this filing.

Texas law, setting up a trust and retaining a revisionary interest means that the donor has not retained a right of possession, because he has given away as much as he could. Spouse has absolute right to manage as long as no Fraud in the Community, which this case does have. Appellee unlawfully sold properties to the exclusion of Appellant's right. Conversion of the property to as he claims his "sole and separate property was intentional, wanton, willful, and without justification or excuse and was done with gross indifference.

Appellant awarded by gift, separate property. If spouse acquires by gift, devise, than is spouse separate estate, revenues are separarate by virtue of which title is vested.

Trustee is a fiduciary, a trust, once he has accepted appointment, has a fiduciary relationship to the beneficiaries of the

16

Trust. Trustee are subject to the duties imposed by common law, the duties imposed by Texas Trust Code, and the duties imposed by the instrument creating the trust, Tex. Trust Code, Ann 113.051 (Vernon 1984), (See App. 4) Suit may be brought as an action for breach of contract as an action in tort, as an action in equity, or as an action for declaratory judgement.

A beneficiary of a trust means that a person has a present or future interest in a trust, vested or contingent. If more than one person creates or contributes property to a trust, each person is a settlor, except to the extent another person has the power to revoke or withdraw that position.

"Terms of a trust" means the manifestation of the settlor's intent regarding the trust provisions as written in the trust instrument or that may be established by other evidence (deeds, sell of other properties, contracts for sale, income taxes, franchise records, joint bank accounts).

Duty of a trustee is to act in good faith, and in accordance with the purposed of the trusts and the interest of the beneficiaries. The power of the court has to adjust a trustee's compensation in the terms of the trust which is unreasonably high or low. The trustee must exercise discretionary power in good faith and in accordance with its terms and purposes and the interest of the beneficiaries. The terms of trust may not deny a court authority to take such action as necessary in the interests of justice, including requiring that a trustee furnish a bond, subsection. The trustee remains accountable to the beneficiaries for the trustee's actions. Trusts involves common law and principles

17

of equity supplement. A nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust, Non Judicial Settlement Agreements, any interested party may request the court to determine whether the representation was adequate to determine whether the agreement contains terms and conditions the court could have properly approved. Appellant disagrees as to whom is beneficiary and grantor of Bass Living Trust, and whom violated the trust agreement (Richard Bass). His attorneys stated numerous items of the trust, Diana Bass disagreed with, such as ownership, whom owned the properties, etc.. His attorney stated Richard Bass inherited properties. Diana Bass also inherited properties, rules of construction attribute intention to individual donors based on the assumptions of common intention, also as to the meaning of "heirs" or 'issue' . The Ex Parte Hearing was also given power to Richard Bass to revoke the trust without Diana Bass consent. Trust termination requires beneficiaries approval, not given by Diana Bass.

Transfer of property to another person as trustee, during settlor's lifetime, declaration by the owner of the property that the owner holds identifiable property as trustee (both parties of this case were trustees, grantors, and beneficiaries). . A trust is not created until it receives property, and property interest. A trust and its terms must be for the benefit of the beneficiaries.

The MSA stated Richard Bass to pay "all the taxes", then in the divorce settlement, which was not in MSA, stated "no innocent spouse relief" may be used, therefore, indicating fraud by Richard Bass. The MSA did not include what was separate, community or both, and trust

18

of economic value. Income Tax Laws and Trust are separate from divorce laws, and the MSA would benefit Richard Bass and not Appellant, beneficiaries of the trust hold the beneficial interest in the trust property, Diana Bass was a beneficiary. Trust may be amended only by joint action of both spouse, this is to preserve the community character of property transferred to the trust. Joint tenancies in real estate , each spouse would presumably be treated as having made an equal contribution because of the right to sever the interest and convert it into tenancy in common. Trust estate laws are complicated with many laws affecting. Appellant claims one-half interest separate or community, and therefore, contesting MSA and divorce settlement.

Whenever trustee has comingled the property, the right is so defeated if the beneficiary can trace to the comingled fund,. If the comingling was wrongful, the burden o the trustee to establish which property is rightfully this trustee, if the trustee is unable to do so, the entire comingling of property is subject to the trust.

Texas courts have held trusts to a "very high and strict standard of conduct which equity demands'. Trustees have duty and loyalty to beneficiaries, of good faith, good duty, loyalty, and a fidelity with respect to trust.

There was no partition agreement. Trust did not specify that property were separate property.

Recorded titles conveyed to one or both of the spouses during marriage, the conveyances places legal title into the spouses as

19

grantees, and the equitable title is presumed to be in the community. Deeds were executed, and tracing not necessary due to joint trust bank account, and comingling of funds.

## CONCLUSION

This court should void Mediated Settlement Agreement, Divorce Settlement, and Ex Parte Hearing. Intentional fraud, property and monies theft, improper division of community, separate, or both properties, voids the settlements, and therefore hearing.

The MSA and first court hearing were "bait and switch" games, a look "under the hood" of the details in this case shall prove. There is no reason, nor law that should protect the person and or spouse committing the fraud, especially with "greed and power" abuse the theme in every contract, agreement, hearings, and illegally selling of properties, ignoring the spouse rights, disability, loss of homes (including homestead and separate property), and no monies for medical treatments (including past due bills owed, which is community), nor treatments needed now. Honesty, and good faith, fair dealings should be the theme of all that takes place in the legal system.

Attorney's fees in the future should be paid out of Richard Bass monies. This case can be summed up "as truth vs. lies". Appellant is the innocent spouse, and Diana Bass hopes the legal system will correct the injustices. $450,000.00 is requested as declaratory judgment. Richard Bass using exculpatory clause, did not act in good faith, and will not do so in future. Also, Diana Bass request Motion for a lawyer to represent me "in court" and in future, probono.

20

EX Parte Hearing should be dealt with by the courts, with justice being served, fraud should not be allowed even if was spouse. MSA should be voided and unenforceable. All community assets to be split equally, and that means all monies included.

## PRAYER

Based upon the foregoing facts and analysis, Appellant respectfully requests that this Court:

1. Reverse the trial court order of Ex Parte Hearing, granting MSA, and Power of Attorney to Richard Bass, Appellee.
2. Declaratory judgement, due to illegal sell of Appellants sole or community properties, $450,00.00, to be paid as a lien on future final closing of properties, either with this buyer or another. Or fifty percent interest in future earnings from properties of sell to another buyer.
3. Medical bills that are due now are to be paid immediately by Richard Bass and until closing of properties and Diana Bass paid from funds from sell of any properties or any other monies $450,000.00 lien to be paid to Appellant on properties, medical bills or to be paid by Richard Bass, until time all monies due are paid(which could be quite substantial due to serious mold toxicity issues.
4. Appellants future attorney's fees to be paid Richard Bass, to prevent further fraud upon Appellant.
5. Spousal maintenance of $3,500.00 monthly, ( not out of her $450,000.00 settlement) until all monies paid to Appellant (including disability maintenance); moving expenses to be paid

now of $10,000.00 not out of settlement, any community bills to be paid not out of settlement, chandelier to be packed up and sent to Diana Bass immediately, Couch and mower sent to Diana Bass immediately, some of the patio furniture, one half of all stainless steel shelves in garage, and house, tax records of past years to Diana Bass, all taxes to be paid of both parties by Richard Bass, and Diana Bass may use innocent spouse relief, if necessary. This includes rollback and franchise tax, or any other taxes. Diana Bass also may use capital gains tax deduction from sell of her properties if necessary.

6. Diana Bass request divorce immediately, with name change to Diana Fay Spriggs. Voided MSA agreement. Voided divorce settlement, Diana Fay Bass attorney will write divorce papers, and after, both parties agree will be sign. Any other issue will have to go to Alternative Dispute Resolution. Any further property exchanges or sells, or future earnings Diana Bass entitled to one-half (including any portion of any and including Vintage Place Funds, and or development, or any other development.

7. All copies of anything, anywhere, at anytime signed as Power of Attorney by Richard Bass be given to Diana Bass immediately, sent certified copies by Fed Ex. And any that was illegal may again allow Diana Bass to further pursue litigation, including Gary Schnell, and Vintage Place Funds as also contributing to breach of contract, lack of fiduciary duty, unfair dealings, property and monies theft (this also includes broker).

8. Any further fraud, duress, or coercion in MSA is a serious matter,

21

and all damages should be consider against Richard Bass, as was intentional malicious intent to deceive, and fraud.

A statement by the court should be made on what property is separate or community, or both during this marriage.

Respectfully submitted,

_Diana Fay Bass_ ___12/20/2015___

By Diana Fay Bass, Appellant (Pro SE Litigant)

db424fzfz@live.com

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY THAT A TRUE AND CORRECT COPY OF THE ABOVE AD FOREGOING DOCUMENTS AND EXHIBITS HAS BEEN SERVED VIA EFILE ON MONDAY, DECEMBER 1 2015:  December 20, 2015

DIANA FAY BASS, APPELLANT _Diana Fay Bass_

# APPENDIX FOR APPELLANT DIANA BASS

APP 1    12 A TEX. JUR. 3D COMPROMISE AND SETTLEMENT

APP 2    HAMILTON V. WILSON, 249 S.W. 3D 425, 426

APP 3    BARR V RESOLUTION TRUST 837, W. 2D, 627, 623, 631 (TEX. 1992

APP 4    V.T.C.A., FAMILY CODE 3.001, SEPARATE PROPERTY

APP 5    OPINION BY JUSTICE MARTIN RICHER, STATE BANK & TRUST 212 S.W. 3D 813, 814

APP 6    COURT OF APPEALS OF TEXAS EL PASO, MORSE V. MORSE, NO. 08-09-00046-CV

APP 7    112.001-METHODS OF CREATING A TRUST-WESTLAW-CONSTRUCTIVE TRUSTS

APP 8    OPINION CHIEF JUSTICE BELL, 323 HAMBLEN V. HAMILTON PREELY WERLIEN, HOUSTON, FOR APPELLANT

APP 9    CHAP 1, THE TEXAS MARITAL PROPERTY SYSTEM, C (A), ARTICLE 16

APP 10   FAMILY CODE-TITLE 1, CHAP. 3 , 3.101-3102 JEAN V. JEAN TYSON, 118 S.W. 3D 1.5 (TEX. APP) HOUSTON (14TH ) DISTRICT, 2003, PET DENIED

A

# APPENDIX FOR APPELLANT DIANA BASS

APP   11     MILNER V. MILNER, 36, S.W. 3D 615, 618 (TEXAS 2012)

APPENDIX PAGE 2, APPELLANT DIANA BASS

APP   11     (TEXAS 2012) FAMILY ORDER TITLE 1 CHAP 6, SUIT FOR

DISSOLUTION OF MARRIAGE

APP   12     FAMILY CODE 3.006.  PROPORTIONAL OWNERSHIP OF

MARITAL ESTATES

APP   13     67. S.W. 3D 398, COURT OF APPEALS OF TEXAS,

BOYD V. BOYD

APP   14     LOCAL RULES OF TRAVIS COUNTY

B

WestlawNext™

## § 18.Avoidance of compromise and settlement
Mary Ellen West, J.D.    Texas Jurisprudence, Third Edition    *(Approx. 3 pages)*

12A Tex. Jur. 3d Compromise and Settlement § 18

Texas Jurisprudence, Third Edition
Database updated October 2015
Compromise and Settlement

Mary Ellen West, J D.

III. Avoidance

Topic Summary  References  Correlation Table

### § 18. Avoidance of compromise and settlement

#### West's Key Number Digest

West's Key Number Digest, Compromise and Settlement ⟫6(3)

#### A.L.R. Library

Modern status of rules as to avoidance of release of personal injury claim on ground of mistake as to nature and extent of injuries, 13 A.L.R.4th 686

Avoidance of lump-sum settlement or release of bastardy claim on grounds of fraud, mistake, or duress, 84 A.L.R.2d 593

Right of action for fraud, duress, or the like, causing instant plaintiff to release or compromise a cause of action against third person, 58 A.L.R.2d 500

Discretion of court to vacate its approval of settlement or release in respect of personal injury to minor, 8 A.L.R.2d 460

#### Forms

Texas Forms Legal and Business §§ 16:22 to 16:24 (Authorization to settle claim)

Texas Jur. Pleading and Practice Forms 2d § 66:28 (Answer—Affirmative defense—Undue influence invalidating settlement agreement)

Texas Jur. Pleading and Practice Forms 2d § 66:29 (Answer—Affirmative defense—Duress inducing agreement by threats to contest will on false grounds)

Fraud, undue influence, accident, and mistake are grounds on which a compromise settlement will be set aside by courts.[1] Failure of consideration is also sufficient to vitiate a compromise agreement.[2]

A compromise agreement will not be set aside merely on a showing that it is harsh or unequal in its operation[3] or that the value of the property received by the complaining party is disproportionate to that which he or she might legally have recovered.[4] It is also immaterial if the compromise agreement turns out to be advantageous to the creditor.[5] A settlement agreement is properly enforced, even though the defendant makes a unilateral mistake in determining the amount of benefits to which the plaintiff is entitled; a defendant is not allowed to repudiate a settlement agreement after discovery that the plaintiff is entitled to a smaller sum than that allowed in the compromise.[6]

Defenses that would have been available in an action on the disputed claim are not available to avoid liability on the compromise and settlement agreement.[7]

#### Footnotes

1    Hines v Massachusetts Mut. Life Ins. Co., 174 S.W.2d 94 (Tex. Civ. App. Fort Worth 1943); Ross v. Seip, 154 S W.2d 958 (Tex. Civ. App. Texarkana 1941), writ refused; Davenport v. Shepherd, 197 S W 729 (Tex. Civ. App. Beaumont 1917), writ refused, (Feb. 6, 1918).

2    Economy Furniture, Inc. v Jirasek, 345 S W.2d 951 (Tex. Civ. App. Austin 1961), writ refused n.r.e., (Oct. 3, 1961).

3    Davenport v. Shepherd, 197 S.W. 729 (Tex. Civ. App. Beaumont 1917), writ refused, (Feb. 6, 1918).

SELECTED TOPICS

Compromise and Settlement

Settlement of Litigation and Compromise of Disputed Claims

**Secondary Sources**

**Validity and effect of "Mary Carter" or similar agreement setting maximum liability of one cotortfeasor and providing for reduction or extinguishment thereof relative to recovery against nonagreeing cotortfeasor**

22 A.L.R.5th 483 (Originally published in 1994)

...This annotation collects and discusses the cases addressing the validity and effect of "Mary Carter" or similar agreements between an injured plaintiff and one or more, but not all, cotortfeasor defend...

**Power of city, town, or county or their officials to compromise claim**

15 A.L.R.2d 1359 (Originally published in 1951)

...(Supplementing annotation in 105 A.L.R. 170.) This annotation deals with the power of certain governmental subdivisions, namely, cities, towns, and counties or their officials, to compromise a claim in...

**Settling the Case—Plaintiff**

4 Am. Jur. Trials 289 (Originally published in 1966)

...This article deals with settlement techniques relating to personal injury, death, and property damage cases. It omits other related matters, such as obtaining information about the case, preparing for ...

See More Secondary Sources

**Briefs**

**JOINT APPENDIX, VOL. I**

2002 WL 33933818
State Farm Mutual Automobile Insurance Company v. Campbell
Supreme Court of the United States
August 19, 2002

...WILLIAM B. BOHLING Plaintiff - CURTIS B. CAMPBELL Represented by: W. SCOTT BARRETT Represented by: ROGER P CHRISTENSEN Represented by: L. RICH HUMPHERYS Defendant - STATE FARM MUTUAL AUTOMOBILE Repres...

**Brief of Plaintiffs - Appellees**

2015 WL 694488
In re: DEEPWATER HORIZON. LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; Bon Secour Fisheries, Incorporated; Fort Morgan Realty, Incorporated; LFBP 1, L.L.C., doing business as GW Fins; Panama City Beach Dolphin Tours & More, L.L.C.; Zekes Charter Fleet, L.L.C.; William Sellers; Kathleen Irwin, Ronald Lundy; Corliss Gallo; John Tesvich; Michael Guidry, on behalf of themselves and all others similarly situated; Henry Hutto; Brad Friloux; Jerry J. Kee,
United States Court of Appeals, Fifth Circuit
February 09, 2015

...FN2. ROA 2421 [Settlement Agreement, p.2]. In addition to settling the private suits, BP pled guilty to numerous criminal charges arising from the oil spill. eleven felony counts of seaman manslaughter...

**Joint Appendix**

1998 WL 34082180
CALIFORNIA PUBLIC EMPLOYEES'

app 1

Supreme Court of Texas.

249 S.W.3d 425 (Tex. 2008)

# ⊕ HAMILTON V. WILSON

NADINE HAMILTON, NEE NADINE LAMBERT, PETITIONER, V. SELMA P. WILSON, M.D., RESPONDENT. · NO. 07-0164. · SUPREME COURT OF TEXAS. · MARCH 28, 2008. REHEARING DENIED MAY 2, 2008. · APPEAL FROM THE 237TH DISTRICT COURT, LUBBOCK COUNTY, SAM MEDINA, J.

Fred Bowers, Forrest Bowers, Bowers Law Firm, Lubbock, TX, for Petitioner.

Jim Hund, Linda Ruth St. Clair Russell, Hund Harriger, LLP, Lubbock, TX, for Respondent.

PER CURIAM.

The trial court granted a provider's no-evidence summary judgment motion in at health care liability suit, and the court of appeals affirmed. Because genuine issues of material fact preclude summary judgment, we reverse the court of appeals' judgment and remand this case to the trial court for further proceedings.

On September 16, 2003, eighty-three-year-old Nadine Hamilton was admitted to Covenant Lakeside medical center in Lubbock for back surgery. Prior to the procedure, anesthesiologist Dr. Selma Wilson was summoned to intubate Hamilton and administer general anesthesia. Dr. Wilson attempted the intubation with a 7.5mm endotracheal tube, encountered resistance, and then

inserted the tube 1-2cm farther. When that tube did not reach the depth she expected, she removed it and successfully inserted one that was 7.0mm in diameter. After the surgery, a recovery room nurse extubated Hamilton and suctioned her throat. Hamilton later complained of chest pain, and x-rays indicated that air was entering Hamilton's chest cavity. It was then discovered that Hamilton had \*426 suffered a tear in her esophagus. That night, Hamilton was transferred to another hospital where she successfully underwent emergency corrective surgery by Dr. Donald Robertson, a thoracic surgeon. Hamilton filed a health care liability claim against Dr. Wilson, alleging that she negligently tore Hamilton's esophagus during intubation by forcing the endotracheal tube into her esophagus after encountering resistance.

Dr. Wilson moved for summary judgment, arguing that there was no evidence that she was negligent or that she caused the esophageal tear. Hamilton responded with portions of the depositions of the designated testifying experts (Dr. Robert Finnegan on behalf of Hamilton, Dr. Byron Brown for Dr. Wilson), her medical records, and Dr. Wilson's own deposition. Dr. Finnegan testified that the intubation probably caused the tear in Hamilton's esophagus, and Dr. Wilson and Dr. Brown admitted this was possible. The trial court granted the motion, and the court of appeals affirmed. 223 S.W.3d 535 (/case/hamilton-v-wilson-1)   . Hamilton argues that the court of appeals erred in concluding that there was no evidence that Dr. Wilson negligently tore Hamilton's esophagus. We agree.

In a no-evidence summary judgment motion, the movant contends that there is no evidence of one or more essential elements of the claims for which the non-movant would bear the burden of proof at trial. TEX.R. CIV. P. 166a(i). The trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* The respondent is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX.R. CIV. P. 166a(i) cmt. — 1997. We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (/case/city-of-keller-v-wilson-2#p822) (Tex. 2005).

app 2

In applying this standard, the court of appeals noted that, to recover for medical malpractice, the complainant must prove: 1) the physician had a duty to act according to a certain standard, 2) she breached that standard, and 3) the breach proximately caused the complainant to sustain injury. 223 S.W.3d at 537 (/case/hamilton-v-wilson-1#p537) ; *see IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (/case/ihs-cedars-treatment-ctr-of-desoto-v-mason#p798) (Tex. 2004). After reviewing the acts allegedly performed by Wilson, the court of appeals concluded that the mere possibility and "belief by Dr. Finnegan that Wilson inserted an endotracheal tube into Lambert's esophagus was "not evidence that proves the questioned fact." 223 S.W.3d at 538 (/case/hamilton-v-wilson-1#p538) .

However, Hamilton was not required to prove the facts as she alleged them. Rather, she was only required to provide evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. After examining the evidence on each of the required elements, we conclude that she met this burden.

In his expert report, Dr. Finnegan set out the general standard of care for an anesthesiologist placing an endotracheal tube. She must: a) establish and maintain control of the patient's airway during general anesthesia; b) establish this control in a safe manner; c) promptly recognize and document injuries and complications related to airway management; and d) promptly seek appropriate treatment, if needed, for such injuries and complications.

Hamilton contends that certain diagnostic tests (breath tests, $CO_2$ tests, and use of a pressure bag) should have been used to determine if the 7.5mm tube was in the esophagus and not the trachea before Dr. Wilson attempted to pass the tube after *427 encountering a tight fit. Dr. Finnegan noted that the tests take only ten to fifteen seconds and suggested that it was proper to use these measures to determine if the tube is in the airway and not the esophagus. Dr. Wilson's expert, Dr. Brown, disputed that breath tests should be used in this manner. But Dr. Finnegan noted that factors like the "[a]bsence of breath sounds, absence of $CO_2$ trace, [and] watching the stomach move instead of the chest wall" were measures he had used previously to determine if a tube was in the wrong location in previous intubations. Indeed, ultimately Dr. Wilson did use breath sounds to verify the placement of the second, smaller 7.0mm tube in Hamilton's trachea.

app 2

The available testimony provides some evidence of a breach of the applicable standard of care. Dr. Finnegan testified that Dr. Wilson violated the standard of care by improperly calculating the tube's location. When asked in what respect Dr. Wilson breached the standard of care, Dr. Finnegan responded: "pushing the 7.5 endotracheal tube down into the esophagus."

Dr. Wilson testified that she inserted the tube in farther after encountering resistance. And Dr. Finnegan testified that Dr. Wilson failed to ascertain whether the tube was positioned properly. Dr. Finnegan also concluded that Dr. Wilson's manipulation of the 7.5mm tube caused Hamilton's esophageal tear, and Dr. Wilson and Dr. Brown conceded that was possible. The implication is that breath tests, rather than feel alone, should have been performed to ensure proper placement in the trachea before Dr. Wilson pushed the 7.5mm tube in farther.

We have held that conclusory statements, even from experts, are not sufficient to support or defeat summary judgment. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (/case/wadewitz-v-montgomery-1#p466)    (Tex. 1997); *see also Burrow v. Arce*, 997 S.W.2d 229, 235 (/case/burrow-v-arce#p235) (Tex. 1999) (holding that "it is the basis of the witness's opinion, and not the witness's

qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not

Sign Up

stand or fall on the mere *ipse dixit* of a credentialed witness."). Dr. Finnegan's testimony, however, was not based on mere possibilities, speculation, or surmise. His opinion that the intubation caused

Create an Account → Select Communities → Fill out your Profile

the injury was based on: 1) the location of the tear in relation to where the 7.5mm tube would have been when it was pushed in by Dr. Wilson; 2) his review of the medical records indicating that the

Select your interests

tear was "probably related to intubation at the time of surgery;" and 3) his impression that the "tight fit" encountered by Dr. Wilson was the cricopharyngeal ring of the esophagus. Further, although Dr. Wil... ed her al... theory for... ar occur... s ...ioning of Hamilton's thr... extubatio... testimo... pushed ...ul... in 1-2cm farther even after encountering a "tight fit" could support Dr. Finnegan's conclusion.

Environmental Law      Business Law      Civil Rights      Constitutional Law

The basis for Dr. Finnegan's testimony stands in contrast to the attorney    *Burrow v. Arce* who, whe... malpra... ed only ...tory affi... ir    innocence to defeat sur... ment. *Bu...* .W.2d at ...burrow-v... )    Here, Dr. Finnegan's opin... was based on factual evidence relating to Dr. Wilson's care of    ...amilton and thus, in

Consumer Protection      Copyright Law      Civil Procedure      Securities Law

conjunction with Dr. Wilson's testimony and the medical records, crea... a genuine issue of

material fact. As a result, we conclude that reasonable and impartial jurors could differ in, their conclusions as to what caused the tear in Hamilton's esophagus and that summary judgment was therefore improper; Hamilton produced evidence sufficient to raise genuine issues of material *428 fact on each of the elements she would be required to prove at trial.

We therefore grant the petition for review and, without hearing argument, reverse the court of appeals' judgment and remand this case to the trial court for further proceedings consistent with this opinion. TEX.R.APP. P. 59.1 and 60.2(d).

Contact (mailto:contact@casetext.com)   Features (/features)   Terms (/terms) (https://twitter.com/casetext)
Privacy (/privacy)   About (/about)   Jobs (/jobs)   Press (/press)   Students (/students)
(https://www.facebook.com/casetext)

© 2015 Casetext, Inc.
Casetext, Inc. and Casetext are not attorneys or a law firm and do not provide legal advice.

# BARR v. RESOLUTION TRUST CORP.

No. D-2082.                                                    Email | Print | Comments (0)

837 S.W.2d 627 (1992)

*George J. BARR, Petitioner, v. RESOLUTION TRUST CORP., ex rel. SUNBELT FEDERAL SAVINGS, Respondent.*

Supreme Court of Texas.

September 23, 1992.

**View Case**     Cited Cases     Citing Case

Albert B. Greco, Jr., Barbara L. Wohlrabe, Dallas, for petitioner.

Jack N. Ross, II, Dallas, for respondent.

## OPINION

GONZALEZ, Justice.

The issue in this case is whether a claim by Sunbelt Federal Savings against George Barr based on a partnership promissory note and guarantee agreement is barred by the doctrine of res judicata. The trial court granted Barr's motion for summary judgment based on res judicata. The court of appeals, with one Justice dissenting, reversed the trial court's judgment, holding that the doctrine did not apply. 824 S.W.2d 600. We reverse the judgment of the court

[837 S.W.2d 628]

of appeals and affirm the trial court's judgment.

In 1985, Barr and Ron Knott were partners in the Bar III Venture. On March 14, 1985 Bar III executed a promissory note for $369,750 in favor of Sunbelt's predecessor in interest. The same day, Barr and Knott executed a personal guarantee of the note. In March 1987, Bar III defaulted on the note.

On May 24, 1988, Sunbelt filed two separate lawsuits on the note. In one suit, Sunbelt alleged liability against the partnership as maker of the note and against Knott as guarantor of the note. In the other, Sunbelt alleged that Barr was personally liable because of his unconditional guarantee of the note.

Barr moved for summary judgment in the latter lawsuit on the grounds that the terms of the guaranty agreement were too uncertain to be enforceable. Barr argued that the agreement, a standard form containing a number of options to choose and blanks to complete, was not sufficiently completed to ascertain his liability. The trial court granted the motion, and rendered a final take-nothing judgment. Sunbelt did not appeal the judgment.

Thereafter, Sunbelt amended its pleadings in the suit against the partnership and Knott by adding Barr as a defendant, alleging that his status as a partner created liability for the note. Barr's answer asserted res judicata, among other defenses.

Barr moved for summary judgment on the grounds that the take-nothing judgment in the first lawsuit barred litigation of the claims against him in the second lawsuit. Sunbelt also moved for summary judgment, requesting a judgment on the note. The trial court granted Barr's motion and denied Sunbelt's. This interlocutory judgment became final when the court rendered judgment for Sunbelt on its claims against the partnership and Knott for the full amount of the note.

Sunbelt appealed, arguing that the trial court should have granted its summary judgment instead of Barr's. The court of appeals, with one justice dissenting, determined that the first suit did not bar the second. However, the court concluded that questions of fact prevented rendition in Sunbelt's favor, and thus remanded the case to the trial court. Both Barr and Sunbelt sought review in our court.

Much of the difficulty associated with the doctrine of res judicata is due to the confusion of several related theories. Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. *Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 679 (Tex.1982). Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). [1] Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Gratia v. RC Cola-7-Up Bottling Co.,* 667 S.W.2d 517, 519 (Tex.1984); *Bonniwell v. Beech*

*Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit. [2] *Bonniwell,* 663

S.W.2d at 818. Barr's argument, that Sunbelt should have brought all theories of liability in one suit, is the defense of claim preclusion.

Claim preclusion prevents splitting a cause of action. *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985). The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. Zollie Steakley & Weldon U. Howell, Jr., *Ruminations on Res Judicata,* 28 Sw.LJ. 355, 358–59 (1974).

The question that has given courts the most difficulty is determining what claims should have been litigated in the prior suit. Early on, this Court held that res judicata "is not only final as to the matter actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have decided." *Foster v. Wells,* 4 Tex. 101,104 (1849). We have never repudiated this definition of claim preclusion, and it appears in some form in most definitions of res judicata. *See, e.g., Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985) (res judicata bars not only what was actually litigated but also claims that could have been litigated in the original cause of action). If taken literally, this definition of the rule would require that all disputes existing between parties be joined, regardless of whether the disputes have anything in common. This court has resorted to a wide variety of theories and tests to give res judicata a more restrictive application. [3] *See generally* 5 William V. Dorsaneo III, Texas Litigation Guide § 131.06[4][b][ii] (1991); *Steakley,* 28 Sw.LJ. 355.

Even if only cases from more recent times are considered, our holdings with respect to res judicata are difficult to reconcile. In *Griffin v. Holiday Inns of America,* 496 S.W.2d 535 (Tex.1973) the court determined that a take-nothing judgment in a suit to recover in contract for services and materials did not preclude a subsequent suit to be compensated in quantum meruit. The court rejected the view that a judgment as to one claim is res judicata of all claims or causes of action arising out of the same transaction, and stated that, "[a]s a general rule a judgment on the merits in a suit on one cause of action is not conclusive of a subsequent suit on a different cause of action except as to issues of fact actually litigated and determined in the first suit." *Id.* at 538. The court acknowledged, however, that alternative theories of recovery for the same "claim" may not be brought in different lawsuits. [4]

Thus, in *Griffin,* the court determined that a "cause of action" for res judicata purposes is something more than the set of facts necessary to establish a single theory of recovery but not necessarily the entire transaction between the parties. *Id.* at 537–38. The court gave no guidance on the question of how to make this fine distinction between a mere alternative theory of recovery and a different cause of action. Every theory of recovery has its unique elements of proof. As the *Griffin* case illustrates, only slight variations of the facts to support different theories of the same incident can result in a court finding different causes of action, thus thwarting the purposes of res judicata. *See Steakley,* 28 Sw.LJ. at 361–62.

The court took an entirely different approach in *Westinghouse Credit Corp. v. Kownslar,* 496 S.W.2d 531 (Tex.1973). In that case Kownslar had guaranteed all promissory notes by the maker. The issue was whether res judicata required that Westinghouse bring in one suit its claims for all notes guaranteed by Kownslar that were then in default. Rather than decide whether there was more than one cause of action involved, the court decided the case solely on whether it appeared that the policies of res judicata required such a result. [5]

This pure policy approach as exemplified by *Westinghouse* makes it virtually impossible to determine in advance what policy will win out in any given case. Without any objective standards, each case is decided ad hoc, and therefore the doctrine is "inherently unpredictable" and "affords little basis for consistency and formulation of precedent." *Steakley,* 28 Sw.LJ. at 362–63. *Westinghouse* is the only case we have decided solely on policy grounds.

Then, in *Texas Water Rights Comm. v. Crow Iron Works,* 582 S.W.2d 768 (Tex. 1979), the court shifted the focus from the cause of action to the subject matter of the litigation. The question was whether a major lawsuit instigated to sort out water rights to the lower Rio Grande river precluded a subsequent suit based on the claim that during the pendency of that suit the plaintiff had purchased additional rights. The court concluded that the subsequent claim was barred, noting that:

> *The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.*

*Id.* at 771–72 (emphasis added). *Accord, Gratia,* 667 S.W.2d at 519. Thus this definition is not consistent with earlier formulations of the rule, such as in *Griffin,* that only issues related to a single cause of action are barred in a subsequent suit. While we did not expressly overrule the *Griffin* test in either *Crow Iron Works* or *Gratia* we do so now.

A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit. *Gratia,* 667 S.W.2d at 519; *Crow Iron Works,* 582 S.W.2d at 772.



The definition of res judicata in *Gratia* and *Crow Iron Works* is substantially similar to the rule of compulsory counterclaims embodied in the rules of civil procedure. A party defending a claim must bring as a counterclaim any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." TEX.R.CIV.P. 97.

[837 S.W.2d 631]

The Restatement of Judgments also takes the transactional approach to claims preclusion. It provides that a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose. Restatement of Judgments § 24(1). A "transaction" under the Restatement is not equivalent to a sequence of events, however; the determination is to be made pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." [6] *Id.* § 24(2).

We conclude that the transactional approach to claims preclusion of the Restatement effectuates the policy of res judicata with no more hardship than encountered under rule 97(a) of the rules of civil procedure. Modern rules of procedure obviate the need to give parties two bites at the apple, as was done in *Griffin*, to ensure that a claim receives full adjudication. Discovery should put a claimant on notice of any need for alternative pleading. Moreover, if success on one theory becomes doubtful because of developments during trial, a party is free to seek a trial amendment.

In the case now before us, there is no valid reason to subject Barr to two different lawsuits. In the suit brought previously against Barr, the bank alleged that he executed the guarantee on the same day and as part of the "same transaction" as the promissory note. In both suits Sunbelt seeks to hold Barr primarily liable for payment of the note and seeks the same amount of damages. Both suits require proof establishing the notes of the partnership, that the notes are due, and that the partnership has defaulted. The only factual allegation that Sunbelt pleaded in the second suit that was not in the first is that Barr is a general partner of Bar III Venture.

It is clear that in this case the execution of the partnership note and Barr's guarantee of it were related in time and space and motivation, and the parties considered it as a single transaction. The issues of both claims form a convenient trial unit, whereas separate lawsuits would require significant duplication of effort of the court and the parties involved. With due diligence, the claim that Barr was liable because he is a partner could have been joined in the suit on his guarantee of the partnership note.

We reaffirm the "transactional" approach to res judicata. A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit. For these reasons, the judgment of the court of appeals is reversed and that of the trial court is affirmed.

## FootNotes

1. Res judicata may be further categorized into merger and bar, because the doctrine has different applications depending on which party is successful in the prior suit. If the party asserting a claim prevails, the cause of action is merged into the judgment, and the cause of action as such ceases to exist. *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex. 1985). If the party defending a claim prevails in the prior suit, the judgment acts as a bar to matters which could have been litigated in the original suit. *Id.*



...eals' holding that "res judicata does not preclude relitigation of tion of those issues was essential to the judgment in the first suit." 1982), which is entitled "Issue Preclusion—General Rule", i.e., uage in the case cited by the court, *Faour v. Faour*, 762 S.W.2d 361

without elaboration that res judicata requires an "identity of 1 of *Cities for Affordable Utility Rates v. Public Utilities* V.2d 602, 606 (Tex. 1986); *Bonniwell v. Beech Aircraft Corp.*, , then there is no basis for precluding issues that should have between claim preclusion and issue preclusion. *See Flores v.* 4).



ing the grievance and wrong complained of, must be identical in irley, 93 Tex. 458, 56 S.W. 330, 330 (1900), (all matters that could ed in a succeeding suit); *Freeman v. McAninch*, 87 Tex. 132, 27 S.W. same "subject matter" of the suit); *Moore v. Snowball*, 98 Tex. 16,

...equitable title so as to be different "cause of action" for res judicata purposes); *Ogletree v. Crates*, 363 S.W.2d 431, 436 (Tex. 1963) (while suit to modify a divorce decree and suit to set it aside for fraud are technically different causes of action, they are the same "broad cause of action," and public policy requires all complaints concerning custody could and should have been brought in the same suit).

4. The court did not attempt to apply any test for res judicata to the facts in *Griffin*. Ultimately, the Court based its decision on stare decisis, because other courts had held that quantum meruit is not barred by a judgment on the contract. *Griffin*, 496 S.W.2d at 538. The court did so without discussion of the reasoning in the cases upon which it relied.

5. The court announced a two-step analysis. First the court looked to see if stare decisis decided the case, and determined that there was no controlling case. Second, the court looked to see "whether the factual situation presented is such that the purposes of the doctrine of merger shall be frustrated absent enforcement of the bar." 496 S.W.2d at 532.

6. In *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex.1985), we cited section 24(2) of the Restatement as authority for the definition of claims preclusion. We did not clearly adopt the restatement in that case, however.

---

## Comment

Your Name

Your Email

Comments

1000 Characters Remaining

Leagle.com reserves the right to edit or remove comments but is under no obligation to do so, or to explain individual moderation decisions.

app 3

WestlawNext™

### § 3.001. Separate Property
Vernon's Texas Statutes and Codes Annotated    Family Code   *(Approx. 2 pages)*

Part:    [  1  ] of 3

Vernon's Texas Statutes and Codes Annotated

Family Code (Refs & Annos)

Title 1. The Marriage Relationship (Refs & Annos)

Subtitle B. Property Rights and Liabilities

Chapter 3. Marital Property Rights and Liabilities (Refs & Annos)

Subchapter A. General Rules for Separate and Community Property (Refs & Annos)

V.T.C.A., Family Code § 3.001

### § 3.001. **Separate Property**

Currentness

A spouse's **separate property** consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by **gift**, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

### Credits
Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

### Editors' Notes

#### TEXAS ANNOTATED CODE SERIES REFERENCES

**Gifts** between spouses, Sampson & Tindall's Texas Family Code, Family § 3.005.
Recordation of **separate property**, Sampson & Tindall's Texas Family Code, Family § 3.004.

#### RESEARCH REFERENCES

#### Encyclopedias

37 Am. Jur. Proof of Facts 2d 379, Transmutation of **Separate Property** Into Community Property.
39 Am. Jur. Proof of Facts 2d 373, **Gift** of Corporate Stock.
TX Jur. 3d Family Law § 133, Property Acquired During Marriage by **Gift**.

#### Treatises and Practice Aids

Texas Family Law Service § 17:2, **Separate Property**.
Texas Family Law Service § 19:7, **Separate Property**.
Texas Family Law Service § 20:9, **Separate Property**.
Texas Family Law Service § 21:2, **Separate Property**.
Texas Family Law Service § 24:6, Agreements as to Income or Property Derived from **Separate Property**.
Texas Family Law Service § 18:20, **Separate Property**.
Texas Family Law Service § 18:34, **Gifts**.
Texas Family Law Service § 19:27, **Gifts**.
Texas Family Law Service § 24:31, **Gifts** of Community Property to Spouse.
Beyer, 9 Tex. Prac. Series § 3.7, **Separate Property**--Definition.
Elder, 33 Tex. Prac. Series § 9:3, Definitions--Community Property and **Separate Property**.

**Relevant Notes of Decisions (710)**          View all 1520

Notes of Decisions listed below contain your search terms.

**NOTES OF DECISIONS** (1520)

Validity
In general
Conflict of laws
Federal regulation, conflict of laws
Contracts, conflict of laws
Personal injury recoveries, conflict of laws
Personal property
Real property
Successive communities
Children, successive communities
Determining character of property
Time generally, determining character of property
Acquisition, determining character of property
Nature of separate property, determining character of property
Nature of community property, determining character of property
Intent, determining character of property
Consideration, determining character of property
Proportionate interest, determining character of property
Increase in value, determining character of property
Intentions of parties, determining character of property
Premarital agreements, determining character of property
Inception-of-title rule, generally
Changing character of property
Tracing and identification, changing character of property
Agreements, changing character of property
Commingled property
Devise or descent, changing character of property
Exchanges
Tenancy in common, generally
Fraud
Gifts
Tracing separate property, commingled property
Identification of separate property, commingled property
Consideration, gifts
Spouse, gifts
Findings, gifts
Inherited property
Trusts
Inter vivos trusts
Constructive trusts
Resulting trusts
Spend-thrift trusts
Powers of trustees, trusts
Discharge of trustees, trusts
Interest and title, trusts
Income, trusts
Taxation, trusts
Competence of parties, trusts
Deeds, trusts
Unlawful cohabitation, trusts
Prizes and awards
Earnings
Services prior to marriage, earnings
Bonuses, earnings

app4

WestlawNext

**§ 15. Separate and community property of husband and wife**
Vernon's Texas Statutes and Codes Annotated    Constitution of the State of Texas 1876   *(Approx. 2 pages)*

Part:    [ 1 ] of 3

Vernon's Texas Statutes and Codes Annotated
Constitution of the State of Texas 1876 (Refs & Annos)
Article XVI. General Provisions

**Proposed Legislation**

Vernon's Ann.Texas Const. Art. 16, § 15

## § 15. Separate and community property of husband and **wife**

Currentness

Sec. 15. All property, both real and personal, of a **spouse** owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the **separate property** of that **spouse**; and laws shall be passed more clearly defining the rights of the **spouses**, in relation to separate and community property; provided that persons about to marry and **spouses**, without the intention to defraud pre-existing creditors, may by written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired, or exchange between themselves the community interest of one **spouse** or future **spouse** in any property for the community interest of the other **spouse** or future **spouse** in other community property then existing or to be acquired, whereupon the portion or interest set aside to each **spouse** shall be and constitute a part of the **separate property** and estate of such **spouse** or future **spouse**; **spouses** also may from time to time, by written instrument, agree between themselves that the income or property from all or part of the **separate property** then owned or which thereafter might be acquired by only one of them, shall be the **separate property** of that **spouse**; if one **spouse** makes a gift of property to the other that gift is presumed to include all the income or property which might arise from that gift of property; **spouses** may agree in writing that all or part of their community property becomes the property of the surviving **spouse** on the death of a **spouse**; and **spouses** may agree in writing that all or part of the **separate property** owned by either or both of them shall be the **spouses'** community property.

**Credits**
Amended Nov. 2, 1948; Nov. 4, 1980; Nov. 3, 1987; Nov. 2, 1999.

**Editors' Notes**

### INTERPRETIVE COMMENTARY

#### 1993 Main Volume

Texas has what is known as the community system of property rights of husband and **wife**, that is, all property of whatsoever kind acquired by the husband and **wife**, or either of them, during the marriage other than that specifically declared to belong to the one or the other separately, becomes the community property of the two.

The community property system has lived since the days of the rude tribes of Germany when the **wives** who shared the fighting were thought to be worthy of a share in the spoils. When the Germanic Goths conquered and occupied Spain they carried the concept of community property with them to that nation, and one of the Gothic rulers of Spain by statute made community of matrimonial gains the general law of Spain. Spain, in turn, introduced the community property to the New World, and by this manner it became part of the law of Texas.

The **separate property** of the husband or **wife** is that which is owned or claimed by such **spouse** before the marriage and that acquired afterward by gift, devise, or descent. All other property, whether acquired actually by the husband or the **wife** or by their joint efforts, or in any other way, becomes community property. This estate, therefore, is a variable one; it begins at the marriage with nothing and ends at the dissolution of the marriage with everything, presumptively, of which the parties are

**NOTES OF DECISIONS** (700)

Construction and application
Legislative intent
Purpose
Equality of parties
Marriages, void
Void marriages
Putative marriages
Characterization of property
Separate property
Inception of title, characterization of property
Origin of title, characterization of property
Tracing, characterization of property
Appreciation, characterization of property
Wills, characterization of property
Separation
Divorce, characterization of property
Sufficiency of evidence
Just and right division of property
Agreements
Prenuptial agreements
Postnuptial agreements
Partition agreements
Divorce agreements
Separation and divorce agreements
Depriving spouse of separate property
Spousal gifts
Undue influence, gifts
Burden of proof
Presumptions and burden of proof
Trusts
Resulting trusts
Unlawful cohabitation, trusts
Taxation, trusts
Prizes
Earnings
Gifts
Minors
Unemployment compensation
Workers' compensation
Public records
Damage awards, generally
Personal injuries
Consortium, personal injuries
Contributory negligence of spouse, personal injuries
Parties, personal injuries
Damages, personal injuries
Insurance
Premiums paid with community property, insurance
Premiums paid with separate property, insurance
Life insurance, generally
Death benefits, insurance
Annuities
Bank accounts
Interest, bank accounts
Joint tenancy
Foreign jurisdictions, bank accounts
Stocks and bonds
United States savings bonds
Partition
Bonds
Businesses

possessed. The character of the estate is determined by operation of law according to the time and circumstances of acquisition.

Prior to the passage of the amendment to this section in 1948, attempted partitions of the community estate were repeatedly held void, although the husband could make a gift to the **wife** of his share in the community property with the result that what had been community property became the **separate property** of the **wife**.

The amendment permitting the husband and **wife** to partition their community property, was a direct result of the decision of the Supreme Court in King v. Bruce, 145 T. 647, 201 S.W.2d 803, 171 A.L.R. 1328 (1947) certiorari denied 68 S.Ct. 82, 332 U.S. 769, 92 L.Ed. 355, rehearing denied 68 S.Ct. 151, 332 U.S. 820, 92 L.Ed. 396. The husband and **wife** had previously attempted to partition a portion of their community property. This partition having been foiled, they therefore devised a scheme hoping to effect a partition. They went to New York and had $5800 of their community property transferred to a New York bank. There the husband withdrew $4,000 of the amount which he had paid to him in two containers, each consisting of 2,000 silver dollars. The remainder of the money was drawn in 4 cashier's checks which were indorsed by the parties and placed in the respective containers. The husband and **wife** then entered into a contract whereby each transferred to the other the contents of their container. They then deposited the $2,900 so acquired by the contract in the New York Bank. Upon her return to Texas, the **wife** deposited her $2,900 in a Ft. Worth bank.

A garnishment was run against this deposit by a judgment creditor of the husband. The contract was held to contravene Texas public policy, and, as such, did not effect the character of the property, and hence it was still community property.

The defendant in this case contended that the policy of the state should be changed so that a husband could provide a substantial sum of money for his **wife** as her **separate property** so that she would have money on which to live in the event the estate of her deceased husband was a substantial length of time in the process of administration or was unduly burdened with debts so that very little could be realized in any reasonable time from the community estate. The defendant further contended that a husband should be able to partition the community estate without subjecting the community property to the federal gift tax.

The court admitted the existence of these hardships, as well as the frequency with which they occurred, but said:

> If the electorate of the state desire a change of the state policy, under consideration, it can be made through legislative and constitutional channels provided by law.

Thus the amendment was submitted to the electorate and upon approval brought about the changes contended for in this case.

### TEXAS ANNOTATED CODE SERIES REFERENCES

Gifts Between **Spouses**, Sampson & Tindall's Texas Family Code, Family § 3.005.
Managing **Separate Property**, Sampson & Tindall's Texas Family Code, Family § 3.101.
Recordation of **Separate Property**, Sampson & Tindall's Texas Family Code, Family § 3.004.
Separate and Community Property of Husband and **Wife**, Sampson & Tindall's Texas Family Code, Const. Art. 16, § 15.

### LAW REVIEW COMMENTARIES

Community time, talent, and industry: Effect upon **separate property**. 22 Baylor L.Rev. 527 (1970).
Family Code Symposium; interstate **spouses**, interstate property, and divorce. John J. Sampson, 13 Tex.Tech L.Rev. 1285 (1982).
Gifts of community property interests to **spouse**. 12 Tex.Tech L.Rev. 376 (1981).
Legal effect of marital separation agreements upon community property status: Is it time to amend constitutional definition of **wife's separate property**? 12 St. Mary's L.J. 159 (1980).
Personal injury recovery as **separate property** of married persons. 14 S Texas L.J. 110 (1973).

Revenue from property
Credit purchases
Loans, generally
Title to property
Abandonment, title to property
Deeds and conveyances
Equitable title to property
Estoppel, title to property
Rights of survivorship, creating
Survivorship rights, creating
Community property
Intentions of parties
Recitations in deeds and conveyances
Consideration
Source of funds, generally, deeds and conveyances
Proportionate interest, deeds and conveyances
Notice of separate ownership
Third party transactions
Family member transactions, deeds and conveyances
Remarriage, deeds and conveyances
Conveyances between spouses
Creditors' rights, conveyances between spouses
Reimbursement
Improvement of community property, reimbursement
Purchase or improvement of community property, reimbursement
Improvement of separate property
Purchase or improvement of separate property, reimbursement
Status of improved properties, reimbursement
Successive communities, reimbursement
Amount of reimbursement
Homestead
Foreclosure, homestead
Adverse possession
Expiration of limitation period during marriage, adverse possession
Death of spouse
Rents, revenue from property
Income, revenue from property
Profits, revenue from property
Crops, revenue from property
Livestock offspring, revenue from property
Leases
Mineral interests
Surviving spouses, death of spouse
Management and control of separate property
Capacity to contract, management and control of separate property
Capacity to sell and convey, management and control of separate property
Management and control of community property
Mortgages, management and control of community property
Life estates, management and control of community property
Fraud, management and control of community property
Suretyship
Agency of spouse
Absence of spouse, agency of spouse
Liability of spouses
Notice, agency of spouse
Service of process, agency of spouse
Power of attorney, agency of spouse

Property division in Texas divorce of migrant **spouse**. J. Thomas Oldham, 19 Hous.L.Rev. 1.

Reclassification of tort recoveries by **spouses**. 4 Tex.Tech L.Rev. 359 (1973).

Rights of a surviving **spouse** in Texas in marital property acquired while domiciled elsewhere. 45 Tex.L.Rev. 321 (1966).

Should your **spouse** be compensated for putting you through school? Texas says no; is that just and right? 20 St. Mary's L.J. 897 (1989).

Texas Family Code with commentaries--Title 1. Husband and **Wife**. Joseph W. McKnight, 21 Tex.Tech L.Rev. 911 (1989-1990).

Tortious conduct of **spouse** toward other's property rights. 20 Baylor L.Rev. 29, 30 (1968).

Torts
Ratification, agency of spouse
Necessaries
Attorneys' fees, liability of spouses
Liability of separate property
Liability of community property
Levy and garnishment, liability of community property

## RESEARCH REFERENCES

### 2015 Electronic Update

### ALR Library

87 ALR 6th 495, Validity of Postnuptial Agreements in Contemplation of **Spouse's** Death.
80 ALR 5th 533, **Spouse's** Cause of Action for Negligent Personal Injury, or Proceeds Therefrom, as Separate or Community Property.

### Encyclopedias

37 Am. Jur. Proof of Facts 2d 379, Transmutation of **Separate Property** Into Community Property.
TX Jur. 3d Decedents' Estates § 66, Death of **Spouse** as Terminating Community Estate.
TX Jur. 3d Decedents' Estates § 67, Rights of Surviving **Spouse** to Community Property.
TX Jur. 3d Family Law § 167, Damages for Personal Injury to **Spouse**.
TX Jur. 3d Family Law § 241, Agreement Concerning Income or Property Derived from **Separate Property**.

### Forms

Texas Forms Legal and Business § 32:47, Agreement on Income or Property from **Separate Property**.

### Treatises and Practice Aids

Texas Family Law Service § 17:2, **Separate Property**.
Texas Family Law Service § 19.7, **Separate Property**.
Texas Family Law Service § 20:4, Right of **Spouses** to Divide Property.
Texas Family Law Service § 20:9, **Separate Property**.
Texas Family Law Service § 21:2, **Separate Property**.
Texas Family Law Service § 24:6, Agreements as to Income or Property Derived from **Separate Property**.
Texas Family Law Service § 18:20, **Separate Property**.
Texas Family Law Service § 46:43, Characterization as Community or **Separate Property**.
Leopold, 4 Tex. Prac. Series § 20.4, Validity of Texas **Deeds** Between Husband and **Wife**.
Beyer, 9 Tex. Prac. Series § 3 7, **Separate Property**--Definition.
Leopold, 3A Tex. Prac. Series § 13.28, Interests in Texas Land Held by Multiple Owners--Doctrine of Survivorship Abolished--Survivorship of Husband and **Wife**.
Leopold and Beyer, 38 Tex. Prac. Series § 2.3, **Separate Property**--Before Marriage.
Leopold and Beyer, 38 Tex. Prac. Series § 2 4, **Separate Property**--During Marriage.
Leopold and Beyer, 38 Tex. Prac. Series § 2.5, **Separate Property**--By Agreement.
Leopold and Beyer, 38 Tex. Prac. Series § 11.3, Agreements Concerning Income or Property from **Separate Property**--In General.
Leopold and Beyer, 38 Tex. Prac. Series § 12 4, Content of a Premarital Agreement--Making **Separate Property**.
Leopold and Beyer, 38 Tex. Prac. Series § 11 22, Introduction to Agreements to Convert **Separate Property** to Community Property.
Leopold and Beyer, 39 Tex. Prac. Series § 22.4, Recipients of **Separate Property** Upon Intestacy.
Leopold and Beyer, 39 Tex. Prac. Series § 18.11, Agreements Between **Spouses** and the Presumption.
Leopold and Beyer, 39 Tex. Prac. Series § 18.13, Conveyances Between **Spouses**.

**Relevant Notes of Decisions (674)**          View all 700



**5** When reviewing factual findings for factual sufficiency, a finding will be overturned only if it is so against the great weight and preponderance of the evidence or so lacking in evidentiary support as to be clearly wrong and unjust.

**6** Appeal and Error 🔑 Cases Triable in Appellate Court
Conclusions of law are reviewed de novo.

**7** Marriage 🔑 Fraud, misrepresentation, or imposition
Marriage annulment statute did not condition annulment of marriage upon finding that wife's fraud went to the essentials of the marital relationship; trial court's finding that wife made material misrepresentations to induce husband to marry her was sufficient under annulment statute. V.T.C.A., Family Code § 6.107.

**8** Fraud 🔑 Elements of Actual Fraud
Fraudulent inducement is established by proving that a false material misrepresentation was made that: (1) was known to be false when it was made; (2) was intended to be acted upon; (3) was relied upon; and (4) caused injury.

1 Case that cites this headnote

**9** Fraud 🔑 Materiality of matter represented or concealed
A "material misrepresentation," as an element of fraud, means a reasonable person would attach importance to and would be induced to act on the information in determining his cause of action.

## Attorneys and Law Firms

*597 Meijken Westenskow, Mosaic Family Services, Dallas, TX, for Appellant.

Stephen V. Hartman, Dallas, TX, for Appellee.

Before Justices O'NEILL, MARTIN RICHTER, and LANG–MIERS.

### OPINION

Opinion By Justice MARTIN RICHTER.

The trial court annulled the marriage of Betelehem Desta (Wife) and Festus Anyaoha (Husband) based on fraud. In two issues on appeal, Wife asserts the evidence was legally and factually insufficient to support an annulment and the trial court erred because there was no determination *598 as to whether the alleged fraud "went to the essentials of the marriage relationship." Concluding appellant's arguments are without merit, we affirm the trial court's judgment.

### Background

Husband, a resident of the United States, met Wife, an Ethiopian citizen, on an internet dating site. Wife told Husband she wanted a marital relationship with several children. The two were married in 2007, and began living together in October 2008 after Wife arrived in the United States. Wife claimed Husband abused her, and left him in May 2009 shortly after she received her "green card."

Wife filed a petition for divorce. Husband filed a cross-petition requesting dissolution of the marriage, or alternatively, annulment based on fraud. Following a hearing, the trial judge ruled that the marriage should be annulled and made findings of fact and conclusions of law. This appeal followed.

### Discussion

1 Appellant contends the evidence is insufficient to support an annulment and the trial court erred because it did not determine whether the alleged fraud "went to the essentials of the marriage relationship." We disagree.

A trial court may grant a petitioner an annulment of a marriage if (1) the other party used fraud, duress, or force to induce the petitioner to enter into the marriage; and (2) the petitioner has not voluntarily cohabited with the other party since learning of the fraud or

RAMIREZ, Appellee,
Court of Appeals of Texas, San Antonio.
January 15, 2014

...In assessing whether the evidence supporting a jury finding is legally sufficient, we only consider evidence favorable to the jury's decision and disregard all evidence and inferences to the contrary. ...

See More Briefs

**Trial Court Documents**

**Zapf v. Texas Dept. of Transp**

2011 WL 7301777
Zapf v. Texas Dept. of Transp
District Court of Texas, Jefferson County
August 01, 2011

...August 1, 2011 Dear Counsel: I have now had an opportunity to consider defendant's Motion for Judgment Notwithstanding the Verdict filed in connection with the above-captioned matter. As the parties ar...

**Billy Wayne SELLERS, v. Daniel L. FOSTER, D.O.**

2006 WL 3064769
Billy Wayne SELLERS, v. Daniel L. FOSTER, D.O.
District Court of Texas, Tarrant County
May 11, 2006

...This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed. It is furthe...

**Dallas COUNTY, Appellant, v. Glen HOLMES, Appellee.**

2001 WL 35939063
Dallas COUNTY, Appellant, v. Glen HOLMES, Appellee.
District Court of Texas.
December 06, 2001

...FN1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment. FN2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, ...

See More Trial Court Documents



app 5

We decline this invitation to expand the scope of § 6.107 to impose more than what the statute requires. *See Phi Van Cao v. Hardy,* 352 S.W.3d 218, 221 (Tex.App.-Houston [14th Dist.] 2011, pet. denied) (stating court may not add language to a statute). It is not the function of the courts to expand the scope of a statute beyond the Legislature's intent as expressed in the plain language of the statute. *See Consol. Reinforcement, L.P. v.* *600 Carothers Exec. Homes, Ltd.,* 271 S.W.3d 887, 892 (Tex.App.-Austin 2008, no pet.), *overruled on other grounds by S & P Consulting Engineers, PLLC v. Baker,* 334 S.W.3d 390, 403 (Tex.App.-Austin 2011, no pet.). The statute plainly provides that a trial court may grant an annulment based on fraud. *See* TEX. FAM.CODE ANN. § 6.107. The meaning of fraud is well-established in the jurisprudence of this state, and there is no indication the Legislature intended the term connote anything more or less than the commonly accepted meaning when used in the context of an annulment.



[8] [9] Wife acknowledges that Texas courts determining whether to grant an annulment based on fraud typically look for evidence of fraudulent inducement. *See Villarreal v. Villarreal,* No. 09-09-00319-CV, 2010 WL 2854250 at *5 (Tex.App.-Beaumont May 17, 2010) (not designated for publication); *see also Leax,* 305 S.W.3d at 29. Fraudulent inducement is a species of fraud. *See Tex. S. Univ. v. State Bank & Trust Co.,* 212 S.W.3d 893, 914 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). Fraudulent inducement is established by proving that a false material misrepresentation was made that (1) was known to be false when it was made; (2) was intended to be acted upon; (3) was relied upon; and (4) caused injury. *Id.; see also Montenegro v. Avila,* 365 S.W.3d 822, 826-27 (Tex.App.-El Paso **2012**) (not designated for publication) (concluding evidence sufficient to support finding that husband fraudulently induced wife to marry). Significantly, fraud requires a material misrepresentation. *See Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 276 (Tex.1995). A material misrepresentation, as an element of fraud, means a reasonable person would attach importance to and would be induced to act on the information in determining his cause of action. *Italian Cowboy Partners, Ltd., v. Prudential Ins. Co.,* 341 S.W.3d 323, 3l7 (Tex.2011). Wife fails to explain the distinction, if any, between the materiality requirement imposed by the statute and the "essential to the relationship" standard she seeks to have us impose. The trial court found that Wife made material misrepresentations to induce Husband to marry her. Because the trial court was not required to also determine whether the fraud "went to the essentials of the marital relationship," we cannot conclude it erred in failing to do so. Wife's first issue is overruled.



The judgment of the trial court is affirmed.

**All Citations**

371 S.W.3d 596

**Footnotes**

1    Wife states "there is little Texas case law defining this standard." We have found none.

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 

CASES & CODES    PRACTICE MANAGEMENT    JOBS & CAREERS    LEGAL NEWS    BLOGS    SERVICE PROVIDERS    Search FindLaw

Forms    Law Technology    Lawyer Marketing    Corporate Counsel    Law Students    JusticeMail    Newsletters

FindLaw  Caselaw  Texas  TX Ct App    MORSE v. MORSE

# MORSE v. MORSE

Print

Font size:    A    A    Reset

**FindLaw Career Center**

Attorney
Corporate Counsel
Academic
Judicial Clerk
Summer Associate
Intern
Law Librarian

Search Jobs    Post a Job  |  View More Jobs

View More

## Court of Appeals of Texas,El Paso.

## Gary Edward MORSE, Appellant, v. Dana Ann MORSE, Appellee.

## No. 08-09-00046-CV.

## Decided: August 31, 2010

Before CHEW, C.J., McCLURE, and RIVERA, JJ. Kevin Acker, for Gary Edward Morse. David W. Lindemood, for Dana Ann Morse.

OPINION

Gary Edward Morse appeals an order entered on a motion to compel execution of closing documents and an original petition for post-divorce division of property. This court ordered the parties to attend mediation pursuant to Section 154.021 of the Civil Practice and Remedies Code and they entered into an irrevocable mediated settlement agreement (MSA). Among other things, the agreement required Gary to dismiss this appeal. Gary has instead filed a motion to set aside the MSA. For the reasons that follow, we deny the motion and dismiss the appeal.

FACTUAL SUMMARY

Dana Morse filed a petition for divorce on July 20, 2007. The trial court signed a final decree on September 25, 2008. Neither of the parties appealed. Dana later filed an original petition for post-divorce division of property she alleged Gary had hidden during the pendency of the divorce. She also filed a motion to compel execution of closing documents. On February 18, 2009, the trial court entered an order addressing both the motion to compel and the petition for post-divorce division of property. Gary filed notice of appeal indicating his intent to appeal from that order. Pursuant to our order, the parties attended mediation and, according to the status report filed by Dana, they resolved all matters of controversy between them. Dana attached to her report a copy of the MSA signed by the parties and their attorneys. Among other things, Gary agreed to dismiss his appeal as part of the settlement agreement. He did not comply with the agreement but instead filed a motion to set it aside on the ground that Dana had intentionally breached the agreement by damaging some items of property awarded to him. Dana responds that because the MSA satisfies the requirements of Section 6.602 of the Family Code, it is not subject to revocation by either party.

MEDIATED SETTLEMENT AGREEMENT

A mediated settlement agreement is immediately binding on the parties if the agreement: (1) provides in a prominently displayed statement that is in boldfaced type, capital letters, or underlined, that the agreement "is not subject to revocation"; (2) is signed by the parties; and (3) is signed by the parties' attorneys who are present at the time of signing. Tex.Fam.Code.Ann. § 6. 602(b)(Vernon 2006). If an MSA meets these requirements, a party is entitled to judgment notwithstanding Rule 11 of the Texas Rules of Civil Procedure or another rule of law. Tex.Fam.Code.Ann. § 6. 602(c). Compliance with Section 6.602 makes the agreement an exception to Sections 7.001 and 7.006, which allow revision and repudiation of settlement agreements. Tex.Fam.Code Ann. §§ 7.001, 7.006; In re Joyner, 196 S.W.3d 883, 889 (Tex.App.-Texarkana 2006, pet. denied). A court is not required to enforce an MSA if it is illegal in nature or procured by fraud, duress, coercion, or other dishonest means. Joyner, 196 S.W.3d at 890; Boyd v. Boyd, 67 S.W.3d 398, 404-05 (Tex.App.-Fort Worth 2002, no pet.)(holding that § 6.602 mediated settlement agreement may be subject to rescission due to intentional nondisclosure.); In re Kasschau, 11 S.W.3d 305, 312 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding)(holding that a mediated settlement agreement may be set aside on the ground of illegality).

Gary does not dispute that the MSA meets all of the requirements of Section 6.602. Unless he can establish a ground for revocation, it is binding. The only ground Gary alleges is that Dana intentionally breached the settlement agreement with malice by damaging certain items of property. He cites no authority that an MSA can be revoked due to a party's alleged intentional breach. Because Gary has failed to assert a viable ground for setting aside or revoking the MSA, we deny his motion.

The terms of the MSA require Gary to dismiss this appeal. In the interest of judicial economy, we will not require Gary to file a formal motion. Instead, we sua sponte dismiss the appeal.

ANN CRAWFORD McCLURE, Justice.

App 6

**ABOUT US**

Company History / Media Relations / Contact Us / Privacy / Advertising / Jobs

**FIND US ON**



Copyright © 2015 FindLaw, a Thomson Reuters business. All rights reserved.

**ABOUT US**

Company History / Media Relations / Contact Us / Privacy / Advertising / Jobs

**FIND US ON**

Copyright © 2015 FindLaw, a Thomson Reuters business. All rights reserved.

App 6

or when party breaches fiduciary-like relationship. Matter of Carolin Paxson Advertising, Inc., C.A.5 (Tex.)1991, 938 F.2d 595. **Trusts** ⟷ 93; **Trusts** ⟷ 94.5; **Trusts** ⟷ 102(1)

Court cannot impose **trust** when parties contemplated another relationship. Stauffacher v. Coadum Capital Fund 1, LLC (App. 14 Dist. 2011) 344 S.W.3d 584, rehearing overruled, review denied. **Trusts** ⟷ 1

Person who purchases property for another but purchases it in his own name holds it on a constructive **trust** for the other. Baxter v. Williams (Civ.App. 1976) 544 S.W.2d 192, ref. n.r.e.. **Trusts** ⟷ 104

Disappointment of a mere expectation does not give rise to a constructive **trust**. Linder v. Citizens State Bank of Malakoff, Texas (Civ.App. 1975) 528 S.W.2d 90, ref. n.r.e.. **Trusts** ⟷ 91

Inasmuch as existence of constructive **trust** may be established by parol evidence, such **trust** should be imposed with caution. May v. Little (Civ.App. 1971) 473 S.W.2d 632, ref. n.r.e.. **Trusts** ⟷ 109

Defendants took title as constructive trustees where they took title pursuant to a contract to deliver to plaintiffs a deed to property after plaintiffs paid off a first lien note, assumed a principal note and secured defendants' release therefrom. Shenk v. Ziegler (Civ.App. 1964) 382 S.W.2d 790. **Trusts** ⟷ 99

Making of valuable or substantial improvements in reliance on agreement is not necessary for constructive **trust**, but is at most an evidentiary fact tending to prove reliance by plaintiff on defendant to keep agreement that plaintiff should have interest in land. Holland v. Lesesne (Civ.App. 1961) 350 S.W.2d 859, ref. n.r.e.. **Trusts** ⟷ 99

A **trust** imposed by law irrespective of intention is a "constructive **trust**," and where owner of interest in land transfers it inter vivos to another in **trust** for owner but no memorandum properly evidencing intention to **create** a **trust** is signed, and transferee refuses to perform **trust**, transferee holds interest on a "constructive **trust**" for owner, if transfer was procured by fraud, duress, undue influence or mistake, or transferee was in a confidential relation to owner or transfer was made as security for an indebtedness of owner. Mills v. Gray (Sup. 1948) 147 Tex. 33, 210 S.W.2d 985. **Trusts** ⟷ 94

Where employer claimed to have paid employee, on termination of employment, an amount in excess of that due, and made an agreement with employee pursuant to which employee deposited such amount in a bank in his own name as trustee, upon employer's agreement to make a prompt statement as to employee's account with employer, there was no **trust created** between employer and employee either expressly, constructively, or by implication of law. Mexican Coal & Coke Co. v. Ruckman (Civ.App. 1921) 229 S.W. 347. **Trusts** ⟷ 34 (2); **Trusts** ⟷ 95

#### ---- Application of trust code, constructive trusts

**Trust** Act did not apply to invalidate constructive **trusts**. Shenk v. Ziegler (Civ.App. 1964) 382 S.W.2d 790.

Notwithstanding statute which declared express **trusts** in land invalid unless **created** by a writing, constructive **trust** as to real property was enforceable. Erwin v. Hays (Civ.App. 1954) 267 S.W.2d 884, ref. n.r.e.. **Trusts** ⟷ 92.5

A constructive or resulting **trust** was not inhibited by statute. Tolle v. Sawtelle (Civ.App. 1952) 246 S.W.2d 916, error refused. **Trusts** ⟷ 63.5; **Trusts** ⟷ 92.5

Statute did not prohibit enforcement of constructive **trust** of real estate based on parol agreement. Howard v. O'Neal (Civ.App. 1952) 246 S.W.2d 907, ref. n.r.e.. **Trusts** ⟷ 92.5

The rule that a constructive **trust** would be imposed to enforce breach of a parol promise to reconvey land where a grantee refused to perform relying on the Statute of Frauds was not affected by the Texas **Trust** Act. Gray v. Mills (Civ.App. 1947) 206 S.W.2d 278, affirmed 147 Tex. 33, 210 S.W.2d 985. **Trusts** ⟷ 94

#### ---- Equitable remedy, constructive trusts

Constructive **trust** is not in reality a **trust**, but is an equitable remedy. Oak Cliff Bank & **Trust** Co. v. Steenbergen (Civ.App.1973) 497 S.W.2d 489, ref. n.r.e., Baxter v. Williams



(Civ.App.1976) 544 S.W.2d 192, ref. n.r.e.; Lowther v. Lowther (Civ.App.1979) 578 S.W.2d 560, ref. n.r.e.

Under Texas law, constructive **trust** generally arises when person with legal title to property owes equitable duties to deal with property for benefit of another. Matter of Carolin Paxson Advertising, Inc., C.A.5 (Tex.)1991, 938 F.2d 595. **Trusts**  91

Constructive **trust** remedy, by its nature, is broad and flexible, and being remedial in character, constructive **trusts** have very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. First Nat. Bank of Amarillo v. Bauert (App. 7 Dist. 1981) 622 S.W.2d 464. **Trusts** 91

Equitable remedy of constructive **trust** is broad and far reaching and is designed to circumvent technical legal principles of title and ownership in order to reach a just result. Peirce v. Sheldon Petroleum Co. (Civ.App. 1979) 589 S.W.2d 849. **Trusts** 91

**Part:**     ☐ 1 ☐ of 2

Westlaw. © 2015 Thomson Reuters     Privacy Statement     Accessibility     Supplier Terms     Contact Us     1-800-REF-ATTY (1-800-733-2889)     **Improve Westlaw**     THOMSON REUTERS



| | | |
|---|---|---|
| home on property and deed of | 134 | Divorce |
| trust to secure money | 134V | Spousal Support, Allowances, and |
| borrowed to construct home | | Disposition of Property |
| were executed by both | 134V(D) | Allocation of Property and Liabilities; |
| husband and wife and both | | Equitable Distribution |
| husband and wife entered | 134V(D)9 | Proceedings for Division or |
| "safe keeping agreement" with | | Assignment |
| bank as to proceeds from sale. | 134k876 | Evidence |
| | 134k876.5 | Weight and Sufficiency |
| 1 Case that cites this headnote | 134k876.5(4) | Gifts, inheritance, and change of form |
| | | (Formerly 134k876, 134k253(2), 134k253) |

**9   Divorce**

Trial court has broad discretion
in partitioning property in
divorce proceedings.

| | | |
|---|---|---|
| 134 | Divorce |
| 134V | Spousal Support, Allowances, and Disposition of Property |
| 134V(D) | Allocation of Property and Liabilities; Equitable Distribution |
| 134V(D)1 | In General |
| 134k653 | Discretion of court in general |
| | (Formerly 134k252.1, 134k252) |

## Attorneys and Law Firms

*323 Hamblen & Hamblen, Presley E. Werlein, Jr., Houston, for appellant.

George W. Eddy, Edgar E. Townes, Jr., Houston, for appellee.

## Opinion

BELL, Chief Justice.

In this case the trial court awarded a divorce to appellant and made a division of the property claimed by the parties. The only question on appeal is whether there was error in the jury verdict when the jury failed to find that certain property came to appellant in settlement of her deceased's mother's **estate**.

Appellant contended in the trial court by proper pleadings, and contends here, that her father, R. H. Fonville, in 1937, gave her $2500.00 with which she purchased five acres of land on Sage Road in Harris County. It is her position that this $2500.00 was given her in partial settlement of her interest in her deceased mother's **estate** and thus the land purchased with such money became her separate property. The tract was sold in 1963 for $438,000.00. The net proceeds from the sale, less taxes and expenses, are now represented by assets in an Investment Advisory Agency Account with Texas National Bank of Commerce.

Appellee contends that the Agency Accounts are community property or at least jointly owned.

The court submitted Special Issue No. 3 to the jury, which read as follows:

'Do you find from a preponderance of the evidence that the sum of $2500.00 paid to William H. Wilson and wife as consideration for the conveyance of the 5 acres of land at the northwest corner of Sage and Westheimer, known as 2530 Sage Road, was delivered to the Plaintiff, Beverly Fonville Van Zandt, by her father, R. H. Fonville, in partial settlement of her interest in the **estate** of her deceased mother, Lillian Henrietta Racke Fonville?'

The jury answered, 'We do not.'

In its judgment the court divided the Investment Advisory Account equally between the parties.

Appellant asserts three points of error, contending as follows:

App 8

app 22

1. The court erred in submitting the issue because there was no competent evidence to support its submission, but the evidence conclusively and as a matter of law established the affirmative of the fact inquired about.

2. The answer of the jury is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

3. Where a case is tried on the wrong theory justice requires a reversal and remand for retrial. The contention here is that appellee tried the case on the theory that the property was community when it could not as a matter of law be such but was either the separate property of appellant *324 or was jointly owned by the parties, the interest of each constituting a part of their respective separate estates.

Appellant was the daughter of R. H. Fonville and Lillian Henrietta Racke Fonville. Her mother died intestate in 1916 when appellant was seven years old. She had a younger sister, Irma, who is now Mrs. Julius Garrett. Mr. Fonville married Clara McCormick in 1925. To this marriage was born a daughter, Clarita, who is now Mrs. Neil Buie.

In July, 1916, Mr. Fonville received authority from the County Court to act as community survivor. He filed with the court an inventory of the community estate. It, together with its appraisal, was approved by the court. It showed several pieces of real estate valued in the aggregate at $14,900.00, personal property valued at $7,700.50 and cash of $500.00. The largest item of personal property was 'one drug store, stock, etc.' valued at $4,150.50. The other personal property consisted of notes.

Appellant and appellee were married in 1935.

On December 30, 1937, a deed to the five acre tract of land above mentioned was executed by Wm. H. Wilson and wife, as grantors, and appellee, W. K. Van Zandt, was named as grantee. It is this conveyance that gives rise to the real controversy here involved. In the latter part of 1938 the parties built their home on the tract employing borrowed money. This money would be community property. There is no controversy concerning the status of the improvements.

The evidence all shows that the $2500.00 used to pay the purchase price of the five acre tract was furnished by Mr. Fonville by delivery of his check to appellant. No contention is made that this was a loan. We suppose appellee's contention that the land became community property is based on the presumption that arises from the fact that it was acuired during the marriage under a deed in the form above noticed. However, under all the oral testimony in the case, it was either the separate property of appellant or was equally owned as a part of the separate estate of the parties.

Appellant testified that her father handed her the money with which to pay for the property. She did not remember whether it was in cash or a check though as she best remembered it was represented by her father's check. She took the check to Judge Wilson from whom the purchase was made. She attended to having the deed executed. The reason appellee's name appeared as grantee was because he had told her if the deed was not in his name, he would not be able to borrow money with which to build their house. Later when the money was borrowed to build the home, and the mechanics' lien and deed of trust were executed, appellee handled the transactions though appellant joined in their execution.

Appellee testified in person and part of the testimony he had given in a deposition was read into evidence by appellant's counsel. In the deposition testimony he stated that the estate of Mr. Fonville and his first wife, as shown by the records, was small. He stated the distribution to appellant and her sister was accomplished before his marriage to appellant. (This was incorrect because in 1942 Mr. Fonville conveyed to his two daughters real estate apppearing on the inventory.) He then said that 'Mr. Fonville being partial to Beverly and Irma, frequently handed them or gave them money and things of value with the joking remark, and with the ever-present smile, 'This is a part of your mother's estate.'

After stating that until three or four years before the time of the deposition he and appellant occupied as their home the propery on Sage Road, appellee was asked, 'Did you own that property?' He answered, 'The property was acquired by deed in my name. It remained in my name until the date of the sale to Lewis Funeral *325 Home.' The property was bought from Judge Wilson for $2500.00. When asked the source of the $2500.00, appellee stated, 'Prior to the purchase * * * Mr. Fonville told us that he would be very glad to give us a lot so we might build a home on it. He set an amount of some $4,000.00. We looked at lots in various parts of the city and * * * we decided it would be advantageous to buy acreage * * *'



Fonville Van Zandt, her heirs and assigns' all their right, title and interest. The habendum clause named 'Beverly Fonville Van Zandt'.

It is, we think, of significance that neither in the agreement above noted nor in the quitclaim deed was there a recital that the property was conveyed to appellant as a part of her separate property.

Special Issue No. 3, as worded, cast the burden on appellant to show by a preponderance of the evidence that the $2,500.00 paid for the Sage Road property was delivered to her by her father in partial settlement of her interest in her deceased mother's **estate**. The effect of the jury's answer was to find that she had not discharged that burden to the satisfaction of the jury.

Appellant's position is that all evidence shows that the $2,500.00 was given appellant as partial settlement of her mother's **estate**. The approach is twofold. First, it is contended that the agreement of November 17, 1955, which contains the provisions we have quoted, is contractual in nature and establishes the fact that the $2,500.00 came to appellant in partial settlement of the **estate** and therefore parol evidence cannot be employed to prove otherwise. Secondly, it is contended that even if parol evidence may be considered, all the evidence shows as a matter of law that the money employed to purchase the Sage Road property was transmitted to appellant by her father in partial settlement of her mother's **estate**.

1    2    The deed from Wm. H. Wilson and his wife in 1937 to appellee presumptively vested title in the community **estate** of appellant and appellee, it being executed and delivered during the marriage relationship and there being no recital that the conveyance was to the separate **estate** of the grantee. Van et al. v. Webb, 147 Tex. 299, 215 S.W.2d 151. All cases hold that under such circumstances parol evidence is admissible to show the true consideration for the deed. Were this the only instrument involved, clearly it would be permissible to consider parol evidence that in fact the consideration was the payment of money that came to appellant as an inheritance from her mother. However, appellant urges that the agreement of 1955 was contractual in nature and it in effect recited *327 that the property on Sage Road was conveyed to appellant in partial settlement of her mother's **estate** and the parties to the agreement contracted not to question the conveyance of the Sage Road property to appellant from her father and therefore parol evidence cannot be considered.

We hold that under the facts of this case parol evidence was admissible on the issue as to whether the $2,500.00 with which the land was purchased was delivered to appellant in partial settlement of her interest in her mother's **estate**.

3    The character of the title is determined as of the date it vested. It vested upon execution of the deed from Wilson and his wife to appellee in 1937. Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777; Blanchard v. Blanchard, 293 S.W.2d 825 (CCA), ref., n.r.e.; Speers Marital Rights in Texas, 4th Edition, Sec. 388. As above stated the title was presumptively in the community, but this could be rebutted .

4    5    This was not changed by the 1955 agreement. That agreement, though appellee was a party to it, did not result in the acquisition of the title. Too, it is noted that the agreement merely made a recitation of past fact, that is, that Mr. Fonville had conveyed or caused to be conveyed to appellant the property on Sage Road in partial settlement of her mother's **estate**. There is no recital at all concerning the source of the $2,500.00. The parol evidence rule does not preclude evidence which refutes the recitation of a past fact. McCormick and Ray, Texas Law of Evidence, Second Edition, Sec . 1612, pp. 454—455. The recitation is but evidentiary. A statement in a deed that the consideration was separate or community is but an evidential fact. McCormick and Ray, Texas Law of Evidence, Second Edition, Sec. 1641, p. 495. McCormick and Ray further state in the same section that consequences which the law attaches to a set of facts cannot be prevented by a writing which states facts of a transaction erroneously.

6    Applying these rules to the facts of this case parol evidence was admissible, because the recital we noticed is of a past fact coming after the deed into appellee. The agreement, as shown by the documentary evidence recites facts incorrectly. Mr. Fonville did not convey the property to appellant, nor did he cause it to be conveyed to her. She caused it to be conveyed by Mr. and Mrs. Wilson to appellee. The property was never a part of the first community.

App 8

In the testimony given in person at the trial appellee was asked who first brought up the matter of purchasing the land and he stated it was by mutual agreement with appellant. He and appellant looked over several sites and agreed on the Sage Road property. When the property was actually transferred he was not present. He did not procure the deed. Mr. Fonvile furnished the money. He denied he had any discussion with appellant in which he told her he should be named as grantee in the deed from Judge Wilson.

Documentary evidence reflects joint action by the parties with regard to the property. The mechanics' lien contract for the construction of the home and the deed of trust to secure money borrowed to construct the home were executed by both parties. In 1959, when the parties were considering selling, appellant wrote appellee, 'Mr. Saidus came down yesterday and said he had a buyer for our place. How much do you want? He thinks we should sell. He said for you to phone him.' In 1960 the parties executed a 'listing' agreement to Saidus and Rowe, giving them the exclusive right to sell the property. They both, in 1963, executed a contract to sell. The deed to Lewis Funeral Home in 1963 referred to the consideration as paid to 'us' and to the $438,000.00 'paid to Grantors.' In May, 1963, the parties entered into a 'Safe Keeping Agreement' with the Texas National Bank of Commerce with regard to the money received. It was signed by both parties and required that any instructions to the Bank must be in writing and signed by both parties. On May 15, 1963, an 'Investment Advisory Agency Agreement,' involving the net proceeds from the sale was entered into with the same Bank. In it the parties together were referred to as 'Principal'.

In January, 1966, appellant attempted to have the assets of the Agency Account transferred to a trust over which she had sole control. She did this on the advice of a representative of the Bank that the assets belonged to her. Appellant notified appellee of the action. Appellee demaned a termination of the trust and a return of the assets to the joint account. The Bank acceded to the demand. In 1945, while appellee was serving in the United States Navy, Mr. Fonville wrote him a friendly letter and at one point in it referred to 'your nice home'.

Mr. Fonville died testate in 1954. For some reason, which is not reflected by the record, his will was not offered for probate. Instead of having the will offered for probate, his widow, Mrs. Clara McCormick Fonville, and his three daughters, Beverly Van Zandt, Irma Garrett and Clarita Buie, executed an agreement not to probate the will but to take under the laws of descent and distribution. It was agreed that all property possessed by Mr. Fonville at his death belonged to the community **estate** of Mr. Fonville and his surviving spouse. Mrs. Fonville received one-half of the **estate** and each daughter received one-sixth. A partition was also effected. The husband of each daughter executed the agreement as a party.

The part of the agreement that is of primary importance here is that which deals with distribution of the **estate** of appellant's mother. After dealing with the second community, the agreement made the following provisions:

'It is understood and agreed that during the lifetime of R. H. Fonville there was a settlement of the **Estate** of Lillian Henrietta Racke Fonville, mother of Beverly Fonville Van Zandt and Irma *326 Fonville Garrett, and that transfers of property, in absolute fee simple, and other things of value included:

'To Beverly Fonville Van Zandt he conveyed or caused to be conveyed the following:

'(a) Five (5) acres of land at the northwest corner of Sage and Brownway (Westheimer) Roads, upon which W. K. Van Zandt's residence (known as 2530 Sage Road) is located.'

Then other properties and moneys that were transferred to Beverly or Irma are listed. Following such listing is the following provision:

'It is distinctly understood and agreed that the conveyance of property above mentioned from R. H. Fonville to his daughters Beverly Fonville Van Zandt and Irma Fonville Garrett are hereby recognized and approved and are not to be questioned by any of the parties hereto, their heirs or assigns. In like manner the proceeds of the life insurance policies above referred to in favor of Beverly Fonville Van Zandt, Irma Fonville Garrett and Mrs. Clara McCormick Fonville are recognized to be fully owned by the above named parties, free from any claim of any party hereto.'

On the same day the above agreement was signed, the parties to it, except for appellee, executed a quitclaim deed to Beverly Fonville Van Zandt. The instrument expressed as consideration the sum of $10.00 paid by 'Beverly Fonville Van Zandt, wife of W. K. Van Zandt'. The grantors did 'bargain, sell, release and forever quitclaim unto the said Beverly

App 8

Further, with regard to the contention that the agreement was contractual as to the property, it is noted that there is nowhere a conveyance to appellant of the property as a part of her separate **estate**.

7 There are many cases dealing with conveyances between husband and wife. All of the leading cases are analyzed and discussed by our Supreme Court in Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184. As we understand these cases from reading all of them and from the Supreme Court's interpretation of them in the last cited case, the parol evidence rule is operative to preclude parol evidence not merely because of a contractual consideration in the deed but because the deed from the husband or wife to the other contains the legally operative clauses conveying property to the grantee's separate **estate**. The same rule is applicable where a spouse though not named as a grantor was instrumental in procuring the deed to be so drawn. The reasoning is that the spouse conveying or causing to be conveyed by deed containing the legally operative granting and habendum clauses conclusively evidences an intent to make a gift to the grantee.



In none of the instruments here involved were there these legally operative clauses.

8 Considering all the evidence, we hold there was an issue of fact as to whether the $2,500.00 was in partial settlement of appellant's mother's **estate**. Also considering all of the evidence, the material part of which we have recited herein, we cannot *328 say that the jury's answer to Special Issue No. 3 was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

9 As previously stated, the court divided the Investment Advisory Account equally with no statement as to whether he considered it community property or the property of both owned in equal proportions. As above stated, we are of the view that under the evidence it could not be community property. Whatever the court's theory the trial court has a broad discretion in partitioning the property. No contention is made that the division made was inequitable.

Affirmed.

## All Citations

451 S.W.2d 322

End of Document © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 

App 8

barred her entire cause of action.◆ If he had no interest in the recovery, his contributory negligence would not bar her cause of action.

m. ***Gorman v. Gause***: Doctrine of implied exclusion keeps two people from making an agreement to change the character of property.◆ Doctrine of implied exclusion was applied to a prenuptial agreement, which had declared that no property acquired during the marriage would be community.◆ The Court viewed this as an attempt by the parties to fix the character of marital property by means different from that recognized in the state constitution, and held the agreement to be void and unenforceable.

n. ***Strickland v. Webster***: Wife had purchased property from her husband with money she earned as a school teacher.◆ The couple had entered into an agreement that her personal earnings would be her separate property.◆ While that agreement was found to be invalid, because community property law cannot be changed by contract, the deed executed by the husband conveying the property was effective as a gift.

o. ***King v. Bruce***: A husband and wife attempted to partition their community property into the separate property of each via an elaborate series of transactions.◆ The court held that the couple◆s attempt was ineffective, as it was not recognized by the constitution as a means of acquiring separate property.

    i. Article 16 was amended to include ◆15 after this case.

C. The Constitution as Amended in 1948

a. Article 16 ◆15: Separate and Community Property of Husband and Wife: All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise, or descent, shall be the separate property of the wife; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband; *provided that husband and wife, without prejudice to preexisting creditors, may from time to time by written instrument as if the wife were a feme sole partition between themselves in severalty or into equal undivided interests all or any part of their existing community property,* or *exchange between themselves the community interest of one spouse in any property for the community interest of the other spouse in other community property, whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property of such spouse.*

    i. Partition◆ H and W hold Whiteacre as community property.◆ They decide to split it and one half becomes H◆s separate property and one half becomes W◆s separate property.

    ii. Exchange◆ H and W hold Greenacre and Blackacre as separate property.◆ H exchanges his community property interest in Blackacre for W◆s community property interest in Greenacre, and so then all of Greenacre is H◆s separate property and all of Blackacre is W◆s separate property.

b. These are two new ways to create separate property.

c. Creditors are protected in that if the partition or exchange that creates separate property prejudices creditors, it◆s held invalid.◆ Fact question.

d. These cannot be done in a prenuptial agreement◆ the couple must be married.

e. Must be done on existing community property

    i. Can partition a bank account, but cannot partition future interest earned on it.◆ Interest earned next year will be community and will have to be partitioned again.

    ii. If they separated the accounts so each spouse had their own account, the interest earned will still be community property.

    iii. What do you do to make the interest separate property?◆ Do an exchange at the end of each year, after the interest has been earned.

App 9



by one of the spouses after marriage by toil, talent, industry or other productive faculty belongs to the community estate. Nevertheless, the law contemplates that a spouse may expend a reasonable amount of talent or labor in the management and preservation of his or her separate estate without impressing a community character upon that estate."

***Whittlesey v. Miller***, 572 S.W.2d 665, 669 (Tex. 1978). "In the absence of evidence showing authority, the mere relationship of husband and wife does not give the husband authority to contract with regard to the wife's separate property."

## FAM §3.102. MANAGING COMMUNITY PROPERTY

(a) During marriage, each spouse has the sole management, control, and disposition of the community property that the spouse would have owned if single, including:

(1) personal earnings;

(2) revenue from separate property;

(3) recoveries for personal injuries; and

(4) the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control, and disposition.

(b) If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney in writing or other agreement.

(c) Except as provided by Subsection (a), community property is subject to the joint management, control, and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement.

History of Fam. Code §3.102: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §5.22.

See also *O'Connor's Texas Family Law Handbook* (2015), "Management Rights over Community Property," ch. 2-B, §2, p. 138.

### ANNOTATIONS

#### Sole Management

***Douglas v. Delp***, 987 S.W.2d 879, 883 (Tex.1999). "[H's] loss of earning capacity during the marriage

constitutes his sole-management community property. [H's] credit reputation is also his sole-management community property, as it was acquired, at least in part, during the marriage and would have belonged solely to him were he not married."

***Medenco, Inc. v. Myklebust***, 615 S.W.2d 187, 189 (Tex.1981). "During marriage, community property employment benefits acquired through employment are subject to the sole management, control and disposition of the employee spouse."

***Valdez v. Ramirez***, 574 S.W.2d 748, 750 (Tex.1978). "While [W] was employed by the federal government and earning future rights to a retirement annuity, those contingent rights were community property, but such inchoate rights are characterized by the Family Code as 'special community' under [W's] sole management and control. *At 751:* Thus, while being earned, the right to a future Civil Service retirement annuity was the special community of [W], subject to her sole management, control and disposition. As manager of this 'special community' asset, she had the contract right to select a mode of payment."

***Jean v. Tyson-Jean***, 118 S.W.3d 1, 5 (Tex.App.—Houston [14th Dist.] 2003, pet. denied). "In general, community property is subject to the 'joint management, control and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement.' To effectuate a valid conveyance, both spouses must necessarily be joined in a transaction. [¶] However, where community property is held in one spouse's name only, there is a presumption that the property is *sole-management* community property. [Family Code] §3.104 therefore trumps [Fam. Code] §3.102. Absent a showing of fraud or notice on the part of persons dealing with the named spouse, this sole-management presumption protects third parties who rely on the spouse's authority to deal with the property."

***Madrigal v. Madrigal***, 115 S.W.3d 32, 34-35 (Tex. App.—San Antonio 2003, no pet.). "Proceeds from a life insurance policy acquired as a benefit of employment during marriage are community property. The policy is the sole management community property of the employee spouse, and that spouse may designate the beneficiary of the policy. [¶] A surviving spouse establishes a prima facie case of constructive fraud on the community by proof that the life insurance policy was



suit for dissolution of a marriage to mediation on the basis of family violence having been committed against the objecting party by the other party. After an objection is filed, the suit may not be referred to mediation unless, on the request of the other party, a hearing is held and the court finds that a preponderance of the evidence does not support the objection. If the suit is referred to mediation, the court shall order appropriate measures be taken to ensure the physical and emotional safety of the party who filed the objection. The order shall provide that the parties not be required to have face-to-face contact and that the parties be placed in separate rooms during mediation.

History of Fam. Code §6.602: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Amended by Acts 1999, 76th Leg., ch. 178, §2 (eff. Aug. 30, 1999), ch. 1351, §1 (eff. Sept. 1, 1999).

See also O'Connor's Texas Family Law Handbook (2015), "Mediation," ch. 3-A, §13.1.1, p. 240; "Mediation," ch. 4-D, §10.1.1, p. 414.

### ANNOTATIONS

**Milner v. Milner**, 361 S.W.3d 615, 618 (Tex.2012). "Unlike other settlement agreements in family law, the trial court is not required to determine if the property division is 'just and right' before approving an MSA [under §6.602]. And once signed, [the] MSA cannot be revoked like other settlement agreements. *At 618 n.2:* [MSAs] that comply with ... §6.602 are an exception to [the] general rule [that a party can revoke consent to a settlement agreement anytime before the court renders judgment on the agreement]." After evaluating the MSA, the Court remanded the property-division issue so the MSA's ambiguity could be resolved and a judgment could be rendered.

**Morse v. Morse**, 349 S.W.3d 55, 56 (Tex.App.—El Paso 2010, no pet.). "[H] does not dispute that the MSA meets all of the requirements of §6.602. Unless he can establish a ground for revocation, it is binding. The only ground [H] alleges is that [W] intentionally breached the [MSA] with malice by damaging certain items of property. He cites no authority that an MSA can be revoked due to a party's alleged intentional breach. Because [H] has failed to assert a viable ground for setting aside or revoking the MSA, we deny his motion."

**In re Marriage of Joyner**, 196 S.W.3d 883, 891 (Tex.App.—Texarkana 2006, pet. denied). "Section 6.602 has been classified as a 'procedural shortcut' for enforcement of mediated settlement agreements in divorce cases. ... Here, the parties were entitled to a judgment incorporating the provisions of the mediated settlement agreement and, since no allegation was presented that the agreement was illegal, or procured by fraud, duress, or coercion, and there is no indication the trial court sua sponte questioned the legality of the agreement, the trial court was required to enter a judgment based on the mediated agreement. ... We hold that the judgment granting the divorce was rendered [by oral pronouncement], and since the trial court had no authority (absent an issue on illegality, duress, etc. raised either by the parties or the court sua sponte) to do otherwise, the mediated settlement agreement was a part of the divorce rendition." *See also* **Toler v. Sanders**, 371 S.W.3d 477, 479-80 (Tex.App.—Houston [1st Dist.] 2012, no pet.) (court cannot alter or modify property division in valid MSA).

**Lee v. Lee**, 158 S.W.3d 612, 613-14 (Tex.App.—Fort Worth 2005, no pet.). "Given that [Fam. Code] §7.006(a) ... already allows divorcing parties to enter into written agreements without requiring mediation concerning the division of the community assets and liabilities as well as spousal maintenance, we decline to carve a common-law exception into [Fam. Code] §6.602(b) that allows an unmediated settlement agreement to morph into a mediated settlement agreement based on mere form. We hold that a mediated settlement agreement necessarily requires mediation and a mediator. [¶] Because there was no third party present at the settlement conference between [parties], there was no mediated settlement agreement. Instead, the couple's agreement is simply an agreement under §7.006(a). Such agreements may be revised or repudiated before the divorce is rendered unless the agreement is binding under another rule of law. The trial court abused its discretion in preventing [H] from revoking his consent to the settlement on the basis that the agreement was a binding mediated settlement agreement."

**Mailhot v. Mailhot**, 124 S.W.3d 775, 777 (Tex. App.—Houston [1st Dist.] 2003, no pet.). "It is well-settled that a judgment entered on the agreement of the parties cures all non-jurisdictional defects. A party who asks the trial court to accept a settlement agreement and to enter judgment accordingly may not later attack that judgment. To preserve error for appeal, a party who signs a judgment must specify that his agreement with the judgment is *as to form*, but not as to substance and outcome."



See also *O'Connor's Texas Family Law Handbook* (2015), "Income from separate-property gift," ch. 2-A, §7.2.2(1), p. 106.

#### ANNOTATIONS

***Roberts v. Roberts***, 999 S.W.2d 424, 432 (Tex. App.—El Paso 1999, no pet.). "Generally speaking, one who is claiming the existence of a gift has the burden of proof. However, where the conveyance is from one spouse to the other spouse, there is a presumption of gift. [¶] A gift by one spouse to another may be set aside if it is induced by duress or undue influence. In such a case, the burden rests with the donee to show that the gift was fair and equitable."

### FAM §3.006. PROPORTIONAL OWNERSHIP OF PROPERTY BY MARITAL ESTATES

If the community estate of the spouses and the separate estate of a spouse have an ownership interest in property, the respective ownership interests of the marital estates are determined by the rule of inception of title.

History of Fam. Code §3.006: Acts 1999, 76th Leg., ch. 692, §1, eff. Sept. 1, 1999. Amended by Acts 2001, 77th Leg., ch. 838, §3, eff. Sept. 1, 2001.

### FAM §3.007. PROPERTY INTEREST IN CERTAIN EMPLOYEE BENEFITS

**(a), (b)** Repealed by Acts 2009, 81st Leg., ch. 768, §11(1), eff. Sept. 1, 2009.

**(c)** The separate property interest of a spouse in a defined contribution retirement plan may be traced using the tracing and characterization principles that apply to a nonretirement asset.

**(d)** A spouse who is a participant in an employer-provided stock option plan or an employer-provided restricted stock plan has a separate property interest in the options or restricted stock granted to the spouse under the plan as follows:

**(1)** if the option or stock was granted to the spouse before marriage but required continued employment during marriage before the grant could be exercised or the restriction removed, the spouse's separate property interest is equal to the fraction of the option or restricted stock in which:

**(A)** the numerator is the sum of:

**(i)** the period from the date the option or stock was granted until the date of marriage; and

**(ii)** if the option or stock also required continued employment following the date of dissolution of the mar-

riage before the grant could be exercised or the restriction removed, the period from the date of dissolution of the marriage until the date the grant could be exercised or the restriction removed; and

**(B)** the denominator is the period from the date the option or stock was granted until the date the grant could be exercised or the restriction removed; and

**(2)** if the option or stock was granted to the spouse during the marriage but required continued employment following the date of dissolution of the marriage before the grant could be exercised or the restriction removed, the spouse's separate property interest is equal to the fraction of the option or restricted stock in which:

**(A)** the numerator is the period from the date of dissolution of the marriage until the date the grant could be exercised or the restriction removed; and

**(B)** the denominator is the period from the date the option or stock was granted until the date the grant could be exercised or the restriction removed.

**(e)** The computation described by Subsection (d) applies to each component of the benefit requiring varying periods of employment before the grant could be exercised or the restriction removed.

**(f)** Repealed by Acts 2009, 81st Leg., ch. 768, §11(1), eff. Sept. 1, 2009.

History of Fam. Code §3.007: Acts 2005, 79th Leg., ch. 490, §1, eff. Sept. 1, 2005. Amended by Acts 2009, 81st Leg., ch. 768, §§1, 11(1), eff. Sept. 1, 2009.

Author's comment: The 2009 repeal of Family Code §3.007(a) and (b) effectively reinstates the common-law formula for calculating the community's interest in defined-benefit plans as described in *Berry v. Berry*, 647 S.W.2d 945 (Tex.1983), and *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977).

See also *O'Connor's Texas Family Law Handbook* (2015), "Dividing & Confirming Qualified Private Retirement Benefits," ch. 7-E, p. 836.

#### ANNOTATIONS

##### Generally

***In re Marriage of Reinauer***, 946 S.W.2d 853, 857 (Tex.App.—Amarillo 1997, writ denied). "[R]etirement pay ... connotes an earned property right that accrued by reason of years of service or deferred compensation earned during each month of service. In other words, the payment must, at the very least, be a form of compensation accruing to the individual due to his years of service with the employer. Discretionary payments made for purposes other than as compensation earned during an employee's tenure do not satisfy these criteria and, thus, are not retirement pay or ben-



app 12

## WestlawNext

**Boyd v. Boyd**
Court of Appeals of Texas, Fort Worth.    January 3, 2002    67 S.W.3d 398    *(Approx. 23 pages)*

> Distinguished by Milner v. Milner, Tex., March 9, 2012

Original Image of 67 S.W.3d 398 (PDF)

67 S.W.3d 398
Court of Appeals of Texas,
Fort Worth.

Randall Cary BOYD, Appellant,

v.

Ginger BOYD, Appellee.

No. 2–00–218–CV.    Jan. 3, 2002.

Wife filed for divorce. Parties entered into a **mediated** settlement agreement (MSA) that wife later rejected. The 322nd District Court, Tarrant County, Frank W. Sullivan, III, J., held the MSA was unenforceable and signed divorce decree after trial on property issues. Husband appealed. The Court of Appeals, Livingston, J., held that: (1) failure to disclose bonus in MSA rendered it unenforceable; (2) award of half of retirement benefits to wife did not constitute division of husband's separate property; (3) husband lacked standing to complain that decree improperly imposed duties on Internal Revenue Service and his employer; and (4) amounts withheld from bonus payments for taxes, insurance, and interest were community property subject to division.

Affirmed.

### West Headnotes (29)

Change View

| 1 | **Compromise and Settlement** Ordinarily, settlement agreements arising from **mediation** are not binding where one party withdraws consent to the agreement, unless the other party successfully sues to enforce the settlement agreement as a contract that complies with rule governing enforceable agreements. Vernon's Ann.Texas Rules Civ.Proc., Rule 11.<br><br>10 Cases that cite this headnote | 89<br>89I<br>89k1<br>89k5<br>89k5(1) | Compromise and Settlement<br>In General<br>Nature and Requisites<br>Making and Form of Agreement<br>In general |
| --- | --- | --- | --- |
| 2 | **Divorce** Unilateral withdrawal of consent does not, however, negate the enforceability of a **mediated** settlement agreement in a divorce proceeding, and a separate suit for enforcement of a contract is not necessary. V.T.C.A., Family Code § 6.602.<br><br>13 Cases that cite this headnote | 134<br>134V<br><br>134V(E)<br><br>134k946<br><br><br>134k948<br><br>134<br>134V | Divorce<br>Spousal Support, Allowances, and Disposition of Property<br>Settlement Agreements and Stipulations<br>Revocation, Rescission and Repudiation by Acts or Agreements of Parties<br>Unilateral withdrawal<br>(Formerly 205k279(2))<br>Divorce |

**SELECTED TOPICS**

Divorce

   Alimony, Allowances, and Disposition of Property
      Military Retirement Pension Benefits of Spouse
      Interpreting Broad Release Provisions of Property Settlement Agreement

Disposition of Property

   Property Division Portions of Divorce Decree

**Secondary Sources**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses**

94 A.L.R.3d 176 (Originally published in 1979)

...This annotation collects the cases addressed to the issue whether a spouse's pension or retirement benefits are subject to award or division by the court in settlement of property rights between spouse...

**§ 10.10. Apportionment of retirement benefits**

38 Tex. Prac., Marital Property And Homesteads § 10.10

...Retirement benefits are regarded as employee compensation earned during a certain employment period. As such, retirement benefits "earned by either spouse during the marital relationship are part of th...

**§ 22:38. When benefits are payable**

3 Tex. Fam. L. Serv. § 22:38

...Early retirement is generally subsidized by the employer. A qualified domestic relations order (QDRO) provides for payment of the actuarial amount of the early retirement benefit. It does not provide f...

See More Secondary Sources

**Briefs**

**BRIEF OF PETITIONER ON THE MERITS**

1996 WL 694154
Boggs v. Boggs
United States Supreme Court Petitioner's Brief.
December 03, 1996

...FN* Counsel of Record The opinion of the United States Court of Appeals for the Fifth Circuit is reported at 82 F.3d 90 (5th Cir.1996) and is reprinted in the Appendix to Petition for Certiorari at Cer...

**BRIEF OF THE EMPLOYERS COUNCIL ON FLEXIBLE COMPENSATION AS AMICUS CURIAE SUPPORTING PETITIONER**

1996 WL 708045
Boggs v. Boggs
United States Supreme Court Amicus Brief.
December 06, 1996

...The Employers Council on Flexible Compensation ("ECFC") submits this brief amicus curiae supporting Petitioner. The parties have consented to the filing of this brief.   Correspondence reflecting the p...

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PETITIONER**

1998 WL 714742
Boggs v. Boggs

app 13



**3.3** Damaging or destroying the tangible property of one or both of the parties, including any document that represents or embodies anything of value.

**3.4** Tampering with the tangible property of one or both of the parties, including any document that represents or embodies anything of value, and causing pecuniary loss to the other party.

**3.5** Selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of either party, whether personal property or real estate property, and whether separate or community, except as specifically authorized by this order.

**3.6** Incurring any indebtedness, other than legal expenses in connection with this suit, except as specifically authorized by this order.

**3.7** Making withdrawals from any checking or savings account in any financial institution for any purpose, except as specifically authorized by this order.

**3.8** Spending any sum of cash in either party's possession or subject to either party's control for any purpose, except as specifically authorized by this order.

**3.9** Withdrawing or borrowing in any manner for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan or employee savings plan or from any individual retirement account or Keogh account, except as specifically authorized by this order.

**3.10** Signing or endorsing the other party's name on any negotiable instrument, check, or draft, such as tax refunds, insurance payments, and dividends, or attempting to negotiate any negotiable instrument payable to the other party without the personal signature of the other party.

**3.11** Taking any action to terminate or limit credit or charge cards in the name of the other party.

**3.12** Entering, operating, or exercising control over the motor vehicle in the possession of the other party.

**3.13** Discontinuing or reducing the withholding for federal income taxes on wages or salary while this suit is pending.

**3.14** Terminating or in any manner affecting the service of water, electricity, gas, telephone, cable television, or other contractual services, such as security, pest control, landscaping, or yard maintenance at the other party's residence or in any manner attempting to withdraw any deposits for service in connection with such services.

**4. PERSONAL AND BUSINESS RECORDS IN DIVORCE CASE.** If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

**4.1** Concealing or destroying any family records, property records, financial records, business records or any records of income, debts, or other obligations.

**4.2** Falsifying any writing or record relating to the property of either party.

**4.3** "Records" include e-mail or other digital or electronic data, whether stored on a computer hard drive, diskette or other electronic storage device.

**5. INSURANCE IN DIVORCE CASE.** If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

**5.1** Withdrawing or borrowing in any manner all or any part of the cash surrender value of life insurance policies on the life of either party, except as specifically authorized by this order.

**5.2** Changing or in any manner altering the beneficiary designation on any life insurance on the life of either party or the parties' children.

**5.3** Canceling, altering, or in any manner affecting any casualty, automobile, or health insurance policies insuring the parties' property of persons including the parties' minor children.

**6. SPECIFIC AUTHORIZATIONS IN DIVORCE CASE.** If this is a divorce case, both parties to the marriage are specifically authorized to do the following:

**6.1** To engage in acts reasonable and necessary to the conduct of that party's usual business and occupation.

**6.2** To make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit.

**6.3** To make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation and medical care.

**6.4** To make withdrawals from accounts in financial institutions only for the purposes authorized by this order.

**7. SERVICE AND APPLICATION OF THIS ORDER.**

**7.1** The Petitioner shall attach a copy of this order to the original petition and to each copy of the petition. At the time the petition is filed, if the Petitioner has failed to attach a copy of this order to the petition and

14

# CERTIFICATE OF SERVICE

EFILED _____

WITH FIFTH COURT OF APPEALS

DATED _____ 12/20/2015 _____

SIGNED _____ Diana Fay Bass _____

APPELLANT DIANA FAY BASS